Paul J. GRELLA, Trustee, Appellant,

v.

SALEM FIVE CENT SAVINGS
BANK, Appellee.

No. 94–1674.

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1994.

Decided Dec. 6, 1994.

Kevin P. Sweeney, with whom Alexander
L. Cataldo, Timothy E. McAllister and Cud-

dy Bixby, Boston, MA, were on brief, for appellant.

Kevin J. Simard, with whom Isaac H. Peres and Riemer & Braunstein, Boston, MA, were on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

TORRUELLA, Chief Judge.

This appeal raises an issue frequently debated in bankruptcy courts around the country, but never yet addressed by this court—namely, the permissible scope of a hearing on a motion for relief from the automatic stay under § 362 of the Bankruptcy Code.[1] Paul J. Grella, trustee in bankruptcy ("Trustee") for debtor The Beverly Corporation (the "Debtor"), appeals the district court's affirmance of the bankruptcy court's grant of summary judgment against Trustee in favor of creditor Salem Five Cents Savings Bank (the "Bank") 163 B.R. 4. Because we find that the bankruptcy court erred in entering summary judgment against the Trustee and barring him on principles of *res judicata* and collateral estoppel from pursuing a counterclaim against the Bank, we reverse, and remand to the bankruptcy court for further proceedings consistent with this opinion.

## I. BACKGROUND

On January 26, 1988, the Debtor signed a $1,000,000 promissory note in favor of the Bank. The Debtor later collaterally assigned various promissory notes and mortgages (the "Seventeen Notes") to the Bank to secure that debt. Among the Seventeen Notes was a $290,000 note from the Wellesley Mortgage Corporation (the "Wellesley Note").

On September 4, 1992, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code, activating the automatic stay provisions of § 362. On December 18, 1992, the Bank filed a Motion for Relief from the Automatic Stay pursuant to § 362(d)(1), seeking an order allowing the Bank to exercise its contractual and state law rights and remedies against the Debtor with respect to the Seventeen Notes.[2] In its Motion for Relief, the Bank claimed to have a "perfected security interest" in the Seventeen Notes because it was "in sole and exclusive possession" of the originals. The Bank did not state or allege any other details regarding its security interest. The Bank asserted, as a basis for relief, that the Debtor was unable to provide the Bank with adequate protection for its collateral position.

In his Response to the Bank's Motion for Relief from Stay, the Trustee did not contest the Bank's Motion, but merely stated that he had not had sufficient time to review the pertinent files and determine the existence of any possible defenses to the Bank's claims. The Trustee then requested that a preliminary hearing on the Motion be scheduled, after sufficient time to review the files.

After a hearing on the Bank's Motion for Relief from Stay on January 14, 1993,[3] the Bankruptcy Court granted the Motion and issued an order lifting the automatic stay as to the Bank, and allowing the Bank to exercise "any and all of its contractual and state law rights and remedies" with respect to the Seventeen Notes. In neither the hearing nor the order did the bankruptcy court make any findings about the status of the Bank's security interest in the Seventeen Notes.

Having obtained relief from stay, the Bank filed a Complaint on February 19, 1993, requesting a determination of its secured sta-

---

1. Unless otherwise noted, all citations of statutory sections are to the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 *et seq.*, as amended.

2. Section 362(d)(1) provides in pertinent part: On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest....

3. The Trustee did not attend this hearing, for reasons that are unexplained in the record. Both the Bank and the district court make much of his absence. While we agree with the district court that a trustee's failure to attend a scheduled hearing is troubling and not to be encouraged, we do not find his absence relevant to our analysis here.

tus under § 506(a),[4] and a turnover and accounting of funds by the Trustee as to the Seventeen Notes. In support of its Complaint, the Bank alleged only that it had a "perfected security interest" in the Notes because it was "in sole and exclusive possession" of them. Again, the Bank offered no other details or arguments regarding its interest in the Notes.

On March 29, 1993, the Trustee answered the Bank's Complaint (the "Answer"), denying the Bank's allegation that it had a perfected security interest in the Seventeen Notes because of its exclusive possession. The Trustee asserted as an affirmative defense that the Bank did not perfect its security interest in the Wellesley Note prior to 90 days before the Debtor filed its bankruptcy petition. The Answer also included a Counterclaim, alleging that the Bank's interest in the Wellesley Note is avoidable as a preferential transfer.[5]

On April 8, 1993, the Bank answered the Trustee's counterclaim (the "Reply"). The Bank asserted, *inter alia*, on the grounds of estoppel, waiver and collateral estoppel, that the Trustee was barred from pursuing his preference counterclaim because he failed to file or pursue any objection to the Bank's Motion for Relief from Stay.

On July 7, 1993, the Trustee moved for summary judgment on his preference counterclaim. On August 3, 1993, the Bank opposed that motion and cross-moved for summary judgment on the ground that either *res judicata* or collateral estoppel barred the counterclaim, as the issue of the "validity" of the Bank's interest in the Notes was decided when the Bankruptcy Court granted the relief from stay. The Bankruptcy Court denied both summary judgment motions, finding genuine issues of material fact to exist regarding "the status of the holder of the note." With respect to the Bank's *res judi-*

*cata* and collateral estoppel arguments, the Bankruptcy Court did not make a ruling, but merely said that it was a "legal issue which we can get into later."

On November 16, 1993, the Trustee filed a motion for summary judgment on the *res judicata* and collateral estoppel issues, arguing that the doctrines were inapplicable to the Trustee's preference counterclaim, as there had been no adjudication on the merits of the Bank's security interest during the relief from stay proceeding. On the first page of his Memorandum of Law in support of the Motion for summary judgment, the Trustee stated:

> Only the note entitled "Wellesley Mort. Corp. of April 25, 1990" (the Wellesley Note) ... is presently in dispute. The other notes and mortgages ... have been determined [by the Trustee] to be perfected security interests in favor of [the Bank].

Three days later, the Trustee filed a Motion for Leave to Amend his Memorandum of Law, seeking to amend this statement of facts. The Trustee explained that the original memorandum was written some months before, and at that time the Trustee thought that there was no dispute as to sixteen of the Seventeen Notes. Sometime after the original memorandum was written, but before it was filed, the Trustee apparently determined that he did indeed dispute the Bank's interest in the other notes as well, but had neglected to edit his memorandum before filing it with the court. The Bank objected to the Trustee's Motion for summary judgment on the *res judicata* and collateral estoppel issues, and cross-moved for summary judgment.

After a hearing on the motions, the bankruptcy court granted summary judgment in

---

4. Section 506 allows a creditor to seek determination of the status of a lien on property in which the debtor's estate has an interest.

5. A "preference" is a transfer of a debtor's assets during a specified pre-bankruptcy period that unjustifiably favors the transferee over other creditors. *In re Melon Produce, Inc.*, 976 F.2d 71, 73 (1st Cir.1992). Section 547 allows a bankruptcy trustee, in certain circumstances, to

avoid preferential transfers of an interest of the debtor if the transfer was made within 90 days before the date of the filing of the bankruptcy petition. The creation of a perfected security interest in property during this 90-day preference period is itself a preferential transfer if it meets the other requirements of § 547. *In re Melon Produce, Inc.*, 976 F.2d at 74.

favor of the Bank.[6] In its decision, the court stated without explanation that it was treating the Trustee's preference counterclaim as an "affirmative defense." Although the court recognized that the hearing on relief from stay was a preliminary one, the court went on to state:

> The question of the validity and perfection of a security interest which is the subject of a request for relief from stay goes to the heart of the issues before the court [during a relief from stay hearing]. If the security interest were invalid or unperfected, there would be no cause for relief from stay and the request would be denied.... The Trustee could have raised the perfection issue [underlying his preference counterclaim] at the hearing on the motion for relief. If he felt that I was wrong in denying him additional time to respond, an appeal from my order was appropriate. Having had the potential for one bite at the apple, he cannot relitigate the issue at this time.

The court reasoned that the perfection issue was necessarily, implicitly decided in the relief from stay proceedings, and thus granted summary judgment in the Bank's favor "as to the entire adversary proceeding" on collateral estoppel or *res judicata* grounds.

On May 23, 1994, the district court issued a Memorandum and Order affirming the bankruptcy court's decision. The district court ruled that collateral estoppel bars the Trustee's preference counterclaim, and entered judgment in the Bank's favor on May 25, 1994.

## II. DISCUSSION

### A. *Standard of Review*

■ In an appeal from district court review of a bankruptcy court order, we independently review the bankruptcy court's decision, applying the "clearly erroneous" standard to findings of fact and *de novo* review to conclusions of law. *In re SPM Mfg. Corp.,* 984 F.2d 1305, 1310–11 (1st Cir.1993) (citations omitted). No special deference is owed

to the district court's determinations. *Id.* at 1311.

### B. *Claim and Issue Preclusion*

■ To evaluate the bankruptcy court's decision, we must consider the doctrine of *res judicata* generally. We have explained that there are two different aspects of *res judicata*—claim preclusion and collateral estoppel (also called issue preclusion). *Dennis v. Rhode Island Hosp. Trust,* 744 F.2d 893, 898 (1st Cir.1984). The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits. *Aunyx Corp. v. Canon U.S.A., Inc.,* 978 F.2d 3, 6 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). Once these elements are established, claim preclusion also bars the relitigation of any issue that was, or *might have been,* raised in respect to the subject matter of the prior litigation. *Dennis,* 744 F.2d at 898 (citations omitted) (emphasis in original).

■ The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was *actually* decided in previous litigation "between the parties, whether on the same or a different claim." *Dennis,* 744 F.2d at 899 (quoting Restatement (Second) of Judgments, § 27 (1982)) (emphasis in original). When there is an identity of the parties in subsequent actions, a party must establish four essential elements for a successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. *See NLRB v. Donna–Lee Sportswear Co., Inc.,* 836 F.2d 31, 34 (1st Cir.1987); *In re Sestito,* 136 B.R. 602, 604 (Bankr.D.Mass.1992); *In re Dubian,* 77 B.R. 332, 337 (Bankr.D.Mass.1987). An issue may be "actually" decided even if it is not

---

**6.** Although the court did not explicitly rule on the Trustee's Motion for Leave to Amend his original memorandum of law, the court stated in its Decision that the parties agreed that the only note in dispute was the Wellesley Note.

*explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation. *Dennis,* 744 F.2d at 899 (emphasis in original).

As the Trustee points out, it is unclear whether the bankruptcy court relied on claim or issue preclusion in entering summary judgment and barring the Trustee's preference counterclaim. Although the court's decision refers to claim preclusion, it is based on an issue preclusion analysis. The district court likewise expressly based its reasoning on issue preclusion principles. Both the Bank and the Trustee contend that the doctrine of issue preclusion is the appropriate basis for our analysis here, and we agree. Thus, the broad issue before us is whether all of the elements of issue preclusion, set forth above, are met. In order to make this determination, however, we must first consider exactly what issues were adjudicated during the initial action, a hearing on a motion for relief from stay.

### C. *Issues Determined During a § 362(d) Hearing*

The Trustee argues that the allowance of a motion for relief from stay does not preclude the later prosecution of a preference action, as a determination of the non-avoidability of a lien under § 547 is not, logically or practically, part of a court's decision to grant relief from stay. In support of this position, the Trustee cites the Seventh Circuit's decision of *Matter of Vitreous Steel Prods. Co.,* 911 F.2d 1223 (7th Cir.1990), and urges us to adopt that court's reasoning.

In *Vitreous Steel,* the appeals court held that a decision to lift the automatic stay pursuant to § 362(d) does not preclude the prosecution under § 547 of an adversary complaint. *Vitreous Steel,* 911 F.2d at 1234. The court reasoned that the possible avoidability of a transfer to a creditor under § 547 is not an issue proper for adjudication by a court during a hearing on a motion to lift the automatic stay, and accordingly found that the bankruptcy court erred in barring a trustee's preferential transfer claim on collateral estoppel grounds. *Id.*

▋ The *Vitreous Steel* holding rests on persuasive grounds. First, as the Seventh Circuit noted, it is consistent with the statutory scheme established by § 362, and particularly with the purpose of the relief from stay provision of § 362(d). *Id.* at 1232. As soon as a petition in bankruptcy is filed, the automatic stay provisions of § 362 take effect, preventing all pre-petition creditors from taking action to collect their debts. In certain situations, such as when a creditor has a security interest in the debtor's property and the value of the collateral is less than the amount of the debt, bankruptcy proceedings may only delay the inevitable result. There may be no reason to make the creditor wait for the distribution of the estate, and indeed, early release of the property may aid administration of the estate by allowing a quicker determination of the amount of an undersecured creditor's claim. *Id.* at 1231–32. Thus, Congress included the provision for relief from stay under § 362(d), allowing bankruptcy courts to lift the stay as to certain creditors if grounds for relief are presented. *Id.* at 1232; *see* 11 U.S.C. § 362(d). These grounds are the adequacy of protection for the creditor, the debtor's equity in the property, and the necessity of the property to an effective reorganization. 11 U.S.C. § 362(d). That the statute sets forth certain grounds for relief and no others indicates Congress' intent that the issues decided by a bankruptcy court on a creditor's motion to lift the stay be limited to these matters. *See* 11 U.S.C. § 362(d).

▇ Moreover, the hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be quick. *Vitreous Steel,* 911 F.2d at 1232; *see* 11 U.S.C. § 362(e). Section § 362(e) provides that a bankruptcy court must hold a preliminary hearing on a motion to lift the stay within thirty days from the date the motion is filed, or the stay will be considered lifted. A final hearing must be commenced within thirty days after the preliminary hearing. *Vitreous Steel,* 911 F.2d at 1232 (citing Fed. R.Bankr.P. 4001(a)(2)); *see* 11 U.S.C. § 362(e).

The limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362, and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate. *See, e.g., Estate Construction Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213, 219 (4th Cir.1994) (hearings to lift the stay are summary in character, and counterclaims are not precluded later if not raised at this stage); *Vitreous Steel,* 911 F.2d at 1232 (questions of the validity of liens are not at issue in a § 362 hearing, but only whether there is a colorable claim on property); *In re Johnson,* 756 F.2d 738, 740 (9th Cir.), *cert. denied,* 474 U.S. 828, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985) (relief from stay hearings are limited in scope to adequacy of protection, equity, and necessity to an effective reorganization, and validity of underlying claims is not litigated); *Nat'l Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 658 (Bankr.S.D.N.Y.), *aff'd,* 962 F.2d 1 (2d Cir. 1991) (decision to lift stay does not involve determination of counterclaims, and thus those claims are not precluded later); *In re Quality Elect. Ctrs., Inc.,* 57 B.R. 288, 290 (Bankr.D.N.M.1986) (relief from stay proceedings limited to whether the moving creditor has a colorable claim to a perfected security interest); *In re Pappas,* 55 B.R. 658, 660–61 (Bankr.D.Mass.1985) (trustee's counterclaims may be considered, though not adjudicated, at relief from stay proceedings);[7] *In re Gellert,* 55 B.R. 970, 974–75 (Bankr. D.N.H.1985) (although a bankruptcy court may consider counterclaims during a relief from stay hearing, it is not authorized to a *res judicata* determination of such claims on

their merits); *In re Tally Well Serv., Inc.,* 45 B.R. 149, 151–52 (Bankr.E.D.Mich.1984) (a court may merely consider counterclaims and defenses at a relief from stay hearing, but such hearing is not the proper proceeding for those claims' adjudication); *cf. In re Shehu,* 128 B.R. 26, 28–29 (Bankr.D.Conn.1991) (acknowledging the narrow scope of hearings on relief from stay, but allowing the debtor to present evidence on "indirect defenses" going to offset the amount of the secured debt, for the limited purpose of determining whether the debtor has equity in the property).

These courts' interpretation of § 362 also comports with the statute's legislative history:

> At the expedited hearing under subsection (e), and at all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay. *This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor on largely unrelated matters.* Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. Rather, they will be the subject of more complete proceedings by the trustees to recover property of the estate or to object to the allowance of a claim.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 344 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, at 6300 (emphasis added). The Senate report reiterates this explanation, but also adds:

> However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in

---

7. The Bank cites *In re Pappas* in support of its argument that preference counterclaims are among claims that challenge the "validity" of a creditor's lien, and thus are part of the relief from stay determination. The Bank's reliance on that case, however, is misplaced. As the Trustee points out, that case involved the unusual factual situation of a creditor trying to prevent a trustee from pursuing a defense to a motion for relief. The *Pappas* court recognized that while a § 362 motion for relief hearing is not the proper forum

for deciding counterclaims, a court need not blind itself to such counterclaims, and may consider them where raised. *In re Pappas,* 55 B.R. at 660–61. The court went on to discuss the distinction between "considering" and "adjudicating" such claims, and specifically stated that claims that challenge the validity of a lien "will be considered, though not adjudicated, at the hearing on relief from stay." *Id.* at 661. The Bank somehow overlooked this statement.

exercising its discretion. *What is precluded is a determination of such collateral claims on the merits at the hearing.* S.Rep. No. 95–989, 95th Cong., 2d Sess. 55, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, at 5841 (emphasis added).

The relief from stay procedures established by the Bankruptcy Rules also point to the limited scope of the hearing. Relief from the stay is obtained by a simple motion, Fed.R.Bankr.P. 4001, and it is a "contested matter," rather than an adversary proceeding. Fed.R.Bankr.P. 9014. *See* Advisory Committee Note to Fed.R.Bankr.P. 7001 ("[R]equests for relief from the automatic stay do not commence an adversary proceeding."). In contrast, all actions to determine the validity of a lien, such as a preference action under § 547, require full adjudication on verified pleadings, and must be litigated in adversary proceedings. Fed.R.Bankr.P. 7001. To allow a relief from stay hearing to become any more extensive than a quick determination of whether a creditor has a colorable claim would turn the hearing into a fullscale adversary lawsuit, *In re Gellert*, 55 B.R. at 974, and would be inconsistent with this procedural scheme.

We agree with the Trustee's argument that allowing these hearings to become adversary proceedings would also force the untimely, expedited adjudication of complex and critical issues during the early stages of the case, on the basis of the movant creditor's unverified motion for relief. Trustees would be forced to assert (and win) not only objections to motions for relief from stay, but any and all possible defenses and counterclaims to the underlying claims of the movant creditor, or risk being precluded from raising them later. Bankruptcy courts would likewise be forced to determine the validity, priority and extent of a lien during the relief from stay hearing, and the creditor's motion would thus become a "substitute" for the

normal adversary proceedings on the merits. *See In re Quality Electronics*, 57 B.R. at 290.

Moreover, the Bankruptcy Code specifically provides that a trustee has two years after appointment or until the close of the case to commence a § 547 preference action. Section 546(a)(1). A relief from stay proceeding, conversely, is usually commenced very shortly after the bankruptcy petition is filed, and, as explained above, must be completed no more than sixty days from the filing of the motion for relief. Forcing trustees to raise their counterclaims within that short period, usually during the nascent stages of a bankruptcy case, would in effect allow movant creditors to drastically reduce the two-year limitations period set forth in the Code. Not only is this result patently unfair and inefficient, it renders the Bankruptcy Code's statutes of limitations provision irrelevant—a result we cannot endorse.

For all these reasons, we find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect, and adopt the *Vitreous Steel* court's holding that a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. The statutory and procedural schemes, the legislative history, and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property.[8] If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims

---

8. Indeed, the legislative history of § 362 suggests this very analogy:

> [T]he automatic stay is similar to a temporary restraining order. The preliminary hearing [on a motion for relief from stay] is similar to the hearing on a preliminary injunction, . . . . The main difference lies in which party must bring the issue before the court. While in the injunction setting, the party seeking the injunction must prosecute the action, in proceedings for relief from the automatic stay, the enjoined party must move.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 344 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, at 6300.

elsewhere without violating the automatic stay.

This is not to say that bankruptcy courts can never *consider* counterclaims and defenses, including preference counterclaims, during a relief from stay hearing. As several bankruptcy courts have discussed, there is a significant difference between mere consideration of claims and final adjudication on the merits. *See In re Pappas,* 55 B.R. at 660; *In re Gellert,* 55 B.R. at 974–75; *In re Tally Well,* 45 B.R. at 152. Certainly, a court may take into account any matter that bears directly on the debtor's equity, or that clearly refutes a creditor's claim to the property. For example, if a trustee raises a defense to a creditor's claim at the relief from stay hearing, the court need not ignore this defense, but may consider it when deciding whether to lift the stay. If, however, the stay is not lifted, that creditor is not barred forever from seeking payment. It must simply comply with the automatic stay, and wait with the other creditors for the estate's administration.

 Conversely, if the stay is lifted, the creditor may then prosecute its claim in subsequent litigation. The trustee is not precluded from raising defenses or counterclaims in those subsequent proceedings, because the defense was not fully adjudicated, but only considered, during the preliminary hearing. As a matter of law, the only issue properly and necessarily before a bankruptcy court during relief from stay proceedings is whether the movant creditor has a colorable claim; thus, a decision to lift the stay is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere.

The Bank nevertheless submits that the *Vitreous Steel* analysis is "flawed," and argues:

[A] determination (though not necessarily a final one) as to a creditor's security interest *is* an integral part of any decision

regarding the lifting of the stay ... if the creditor's security interest can be avoided for any reason, there is no cause to grant the creditor relief from stay because the creditor lacks an interest in the debtor's property.

(Emphasis in original). Essentially, the Bank contends that because establishing the validity of a creditor's security interest is an essential element of a relief from stay, the fact that the stay was indeed lifted necessarily implies that the security interest is valid.

This argument is meritless for two reasons. First, it ignores the important distinction between the consideration and adjudication of an issue. In a relief from stay hearing, the only issue properly before the court, and thus the only one actually adjudicated, is whether the stay should be lifted because a creditor has shown a colorable claim. Put another way, and employing the preliminary injunction analogy discussed above, a creditor must show a reasonable likelihood that it has a meritorious claim, and the court may consider any defenses or counterclaims that bear on whether this reasonable likelihood exists. If the stay is lifted, however, what has been actually adjudicated is only that the creditor has shown this reasonable likelihood. It is not a ruling on the merits of the underlying claim.[9]

Second, the Bank's argument also ignores the difference between a *void* claim or lien, and a valid yet *voidable* lien. A creditor's valid, perfected security interest in the debtor's property may nevertheless be voidable as a preferential transfer under § 547. *In re Melon Produce,* 976 F.2d at 74 (the creation of a perfected security interest in property is *itself* a preference, when the perfection takes place during the statutory preference period and other criteria are satisfied). A creditor may therefore have a lien that is sufficient to justify lifting the stay, yet ultimately avoidable by the trustee as a preferential transfer under § 547. Thus, the Bank's contention that "if the creditor's security interest can be

---

9. The Bank also urges us to reject the *Vitreous Steel* court's "rigid rule" and adopt a "flexible approach" which takes unique circumstances into account. We will not, however, overlook Congressional intent, statutory language, and

well-settled procedural machinery that all limit the issues properly adjudicated in such hearings. It is perhaps not surprising that the Bank fails to cite any authority for its "flexible approach" argument, as it lacks any legal or practical basis.

avoided for any reason, there is no cause to grant the creditor relief from stay" is simply wrong.

The only case that the Bank cites purportedly supporting its argument that a relief from stay proceeding can have preclusive effect on a subsequent counterclaim is *In re Monument Record Corp.*, 71 B.R. 853 (Bankr.M.D.Tenn.1987). This case, however, is entirely distinguishable. In *Monument Record*, the creditor and the trustee entered into a specific agreement, in order to resolve the motion for relief from stay, stipulating that the creditor's security interest was a valid first lien. *Id.* at 855. The bankruptcy court held that this specific agreement precluded the trustee from challenging in a later adversary proceeding the perfection of the security interest. *Id.* at 864. We agree with the Trustee that the parties' express agreement was the crux of the *Monument Record* court's ruling, and find that decision is logically limited to those unique circumstances.

■ Applying our holding to the facts presented here, it is evident that the bankruptcy court's order lifting the automatic stay upon the Bank's motion did not have preclusive effect on the Trustee's counterclaims. The only issue properly before the court during that hearing was whether the Bank's claim was colorable, or sufficiently plausible, to lift the stay. The court did not, -and indeed, could not adjudicate the substantive merits of either the Bank's claim, or any possible defenses or counterclaims.[10] Thus,

the issue raised by the Trustee's preference counterclaim was not before the court at the relief from stay hearing, was not actually (or even implicitly) litigated, and was not essential to the court's decision to lift the stay. Therefore, the elements of issue preclusion are not met here.[11] Accordingly, both the bankruptcy court and the district court erred in precluding the Trustee's later counterclaim on those grounds.

### D. *The Trustee's § 547 Preference Counterclaim*

#### 1. The Wellesley Note

■ With respect to the Trustee's counterclaim under § 547, the bankruptcy court ruled that a genuine issue of material fact exists as to the status of the Bank's security interest in the Wellesley Note, and we find that the record supports the court's finding.[12] We therefore remand the case to the bankruptcy court for further proceedings on the validity of the Bank's claim and the Trustee's counterclaim as to the Wellesley Note.

#### 2. The other sixteen of the Seventeen Notes

■ Regarding the parties' dispute over the other sixteen of the Seventeen Notes, the Trustee requests, in the "Conclusion" section of his brief, that we "strike any finding that the Trustee has agreed that the Seventeen Notes other than the Wellesley Note are 'valid' security interests." In a final footnote

---

10. This is so even if the Trustee had attended the hearing and actually raised any defenses. Thus, the Trustee's absence at the hearing is irrelevant. The Bank contends that the Trustee's failure to deny the allegations in the Bank's motion for relief, and to attend the hearing, constitutes a "judicial admission" of the validity of the Bank's security interest. The Bank is misguided. Because a court cannot properly adjudicate the validity of a lien during relief from stay proceedings, a party also cannot "admit," with preclusive, binding effect, to a claim's validity. *See In re Torco Equip. Co.*, 65 B.R. 353, 355 (Bankr. W.D.Ky.1986) (preference claim is not a compulsory counterclaim to a motion for relief because of the limited scope of § 362 proceedings). To hold otherwise would require a trustee to plead any and all affirmative defenses and counterclaims during the relief from stay proceedings, or be forever barred. As we have explained, this is untenable.

11. Moreover, because a relief from stay proceeding merely removes a bar to a creditor from prosecuting its substantive claims, and does not determine the merits of the underlying claim, there is no identity of cause of action between a relief from stay proceeding and an adversary proceeding on the claim's validity. Thus, the elements of claim preclusion are likewise not met here.

12. While the Bank contends that its security interest in the Wellesley Note was perfected by possession prior to the 90–day statutory preference period, the Trustee contends that the Bank did not actually have possession of the Note until about two months before the Debtor filed its bankruptcy petition. Both parties' contentions have support in the record, thus creating a genuine factual issue.

to his reply brief, the Trustee maintains that he is not contending that his motion to amend should have been allowed, but only that genuine factual issues exist regarding the *validity,* as opposed to the perfection, of the other sixteen of the Seventeen Notes, and thus summary judgment as to those notes is improper. He offers no further support for this statement.

Regardless of the meaning or merit of the Trustee's argument as to the other sixteen of the Seventeen Notes, we agree with the Bank that the Trustee has not properly presented or argued this issue on appeal. We have warned litigants that issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal. *Willhauck v. Halpin,* 953 F.2d 689, 700 (1st Cir.1991). Parties must spell out their arguments squarely and distinctly, or "forever hold their peace." *Id.* In his 50–page brief, the Trustee did not raise or address the issue of the other sixteen notes at any point except for the one-sentence statement, unsupported by any argument or case law, in his conclusion. Even when the Bank pointed out this flaw, the Trustee did not more fully develop the argument in his reply brief, but deemed it worthy of only a cursory footnote. This is simply insufficient presentation and argumentation of the issue for any meaningful analysis, and we therefore deem it waived.[13]

### III. CONCLUSION

For the foregoing reasons, we conclude that both the bankruptcy court and the district court erred in barring the Trustee's preference counterclaim as to the Wellesley Note on the grounds of either claim or issue preclusion. Accordingly, we remand to the bankruptcy court for adjudication on the merits of the Bank's security interest and the Trustee's counterclaim regarding the Wellesley Note.

---

13. Because the argument is waived, we do not address it, and we likewise do not address the Bank's counter-arguments that the Trustee's statements in his Memorandum of Law are "admissions," and that the Trustee is estopped from denying his statements.