In re Amado E. Cordero HERNANDEZ,
Debtor.

AMERICAN EXPRESS TRAVEL
RELATED SERVICES CO.,
INC., Plaintiff,

v.

Amado E. Cordero HERNANDEZ,
Debtor and Diego Ferrer,
Trustee, Defendants.

Bankruptcy No. 95–02313(ESL).
Adv. No. 95–0062.

United States Bankruptcy Court,
D. Puerto Rico.

April 23, 1996.

Jose R. Garcia Perez, Gonzalez & Benna-zar, Hato Rey, Puerto Rico, for Plaintiff American Express Travel Related Services Co., Inc.

Irving K. Hernandez, Rio Piedras, Puerto Rico, for Debtor/Defendant Amado E. Cordero Hernandez and Trustee/Defendant Diego Ferrer.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

Before the court is a Motion for Summary Judgment (docket No. 4) filed by American Express Travel Related Services Co., Inc. (AMEX–TRS) and an Opposition to Motion for Summary Judgment (docket No. 6) filed by defendants Amado Cordero Hernandez and Diego Ferrer, Trustee. The issue before this court is whether a claim reduced to judgment in a state court collection of monies action has preclusive effect upon discharge of the claim in future bankruptcy proceedings. After careful consideration, we find the following.

## BACKGROUND

Plaintiff and defendant/debtor entered into an agreement whereby corporate credit card No. 3787–949751–71002 was issued to Amado Cordero Hernandez and Demare Travel and Tours, Inc. At debtor's request, three other supplementary cards were issued in the names of Frances Cordero, Milton Diaz Rivera and Frances Cordero T. with Nos. 3787–949751–71010, 3787–949751–71028 and 3787–949751–71036, respectively. The contract specified that the principal cardholder, which was the corporate entity, and the individual authorized to use the card on its behalf were liable for all charges made with the corporate card as well as the supplementary cards subsequently issued.

The contract further specified that card-holders receive a monthly statement of charges and that payment in full be made no later than thirty (30) days after the closing date of the billing cycle. Docket No. 4, exhibit 2. Subsequently, debtor defaulted on its monthly payments, however, AMEX–TRS continued to pay all charges made on behalf of the corporation.

AMEX–TRS instituted a suit in the state court against debtor for collection of monies. On March 18, 1993 the parties entered into a Request for Consent Judgment (Peticion Para que se Dicte Sentencia por Consentimiento) and final judgment was entered by the Superior Court of Puerto Rico, San Juan Part (Civ. No. KDC 93–0155(807)), on April 14, 1993. Debtor appeared and agreed to the terms of the stipulation without benefit of legal counsel. Pertinent paragraphs of the motion requesting consent judgment follow:

> Mr. Amado Cordero and Demare Travel and Tours, Inc. expressly recognize that the actions on their part as described above constitute voluntary acts which caused damages to AMEX–TRS and their property, pursuant to 11 U.S.C. § 523(a)(6), the debt is not dischargeable in bankruptcy as established by said legal principles.

> Codefendants Amado Cordero Hernandez and Demare Travel and Tours, Inc. stipulate that, in the event that they file bankruptcy, the debt with AMEX–TRS won't be dischargeable under any circumstances, neither will the payment plan be modified in any manner. Also, they agree, in the event of noncompliance of any term of this stipulation, AMEX–TRS will have the right to liquidate the totality of this debt and it could solicit from the Honorable Court an execution of this judgment as stated herein. In such case, the defendants will be obliged to pay an additional sum of $11,784.34 in fees, or 15% of the principal not paid, whichever is less, plus costs.

(translation ours).[1] Docket No. 4, exhibit 3 ¶¶ 9 & 14.

---

1. The Spanish version is as follows:

> El Sr. Amado Cordero Hernandez y Demare Travel and Tours, Inc. tambien reconocen ex-

Debtor conceded owing AMEX–TRS seventy-eight thousand, five hundred, sixty-two dollars and twenty-five cents ($78,562.25) in delinquent charges and interest through December 31, 1992. It was further agreed that debtor would pay the debt in full in monthly installments through September, 1994. Docket No. 4, exhibit 3.

Subsequently, debtor defaulted and a balance of sixty-eight thousand, nine hundred and ninety-seven dollars ($68,997.00) remained. Debtor initiated bankruptcy proceedings under Chapter 13, and after several conversions, the case was dismissed. In addition, the corporation filed a petition pursuant to Chapter 11 and subsequently requested voluntary dismissal. The current bankruptcy petition was filed under Chapter 7 on April 13, 1995.

Shortly thereafter, during a 341 meeting, debtor testified to utilization of the AMEX–TRS corporate account to pay for services rendered to clients of Demare Travel & Tours, Inc. Debtor further stated that Demare's clients were not required to pay for the services at the time requested; Demare would receive payment and commissions at a later date. Docket No. 4, exhibit 5 pp. 10–12. Such actions were contrary to the terms and conditions of the AMEX–TRS contract with debtor which specifically prohibits the reselling of goods, tickets or services purchased by the credit card. Docket No. 4, exhibit 2.

Relying upon the consent judgment as well as debtor's admissions at the 341 meeting, AMEX–TRS is requesting that the court hold the debt not dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), or 523(a)(6). In rebuttal, debtor asserts that preclusive effect should not be given to the consent judgment on the issue of dischargeability of the debt for the following reasons:

1) the elements of a collection of monies action are different from those required for an exception to discharge; 2) dischargeability was never fully litigated as the issue was not essential to judgment; and 3) debtor did not have a full and fair opportunity to litigate in the prior action as he was not represented by an attorney when stipulating to the terms of the consent judgment.

## DISCHARGEABILITY OF A DEBT

We briefly review the underlying policy and bankruptcy provisions governing discharge of debts. The Supreme Court has articulated the central purpose of the Bankruptcy Code as providing a "fresh start" for honest but unfortunate and insolvent debtors. Accordingly, the Code provides a procedure whereby debtors can reorder their financial affairs, resolve matters with their creditors and be given "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

■ In addition, Congress has fashioned various exceptions to the discharge of debts based on the reasoning that the creditor's interest in being paid outweighs debtor's interest in a fresh start. These exceptions are designed to penalize debtors for culpable acts as well as protect innocent creditors. *In re Menna,* 16 F.3d 7, 10 (1st Cir.1994). The exceptions are contained in 11 U.S.C. § 523(a). Those pertinent to this action include the following:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) ...

presamente que las acciones de su parte que se han descrito arriba constituyen actos voluntarios que causaron danos a AMEX–TRS y su propiedad, segun esas palabras se usan en 11 U.S.C. § 523(a)(6), por lo que la deuda es una no descargable en quiebra a tenor con dichos preceptos legales.

Los codemandados Amado Cordero Hernandez y Demare Travel and Tours, Inc. estipulan que, en caso de ellos acogerse a la Ley de Quiebras, se deuda con AMEX–TRS no sera descargable bajo ninguna circunstancia, ni el

plan de pago modificado en forma alguna. Igualmente, acuerdan que, en caso de incumplimiento de cualquiera de los terminos de esta estipulacion, AMEX–TRS tendra derecho a decretar vencida la totalidad de la deuda y podra solicitar del Honorable Tribunal le ejeucuion de la sentencia que se dicte en virtud de la presente. En tal caso, los demandados vendran obligados a pagar una suma adicional de $11,784.34 como honorarios liquidos pactados, o el 15% del principal impagado, lo que fuera menor, mas las costas en ejecucion.

(2) for money, property, services, or an extension renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation or actual fraud other than a statement respecting the debtor's or an insider's financial condition;

(3) ...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(5) ...

(6) for willful and malicious injury by debtor to another entity or to the property of another entity; ...

■■■ Consistent with the purpose of the Code, the exceptions to discharge of a debt set forth in § 523(a) are strictly construed against the creditor and in favor of the debtor. *In re Hunter,* 780 F.2d 1577, 1579 (11th Cir.1986); *In re Ward,* 88 B.R. 727, 728 (Bankr.W.D.Pa.1988). Moreover, the party opposing discharge, has the burden of persuasion. *In re Burgess,* 955 F.2d 134, 136 (1st Cir.1992).

## DISCUSSION

■■■ Congress has vested Bankruptcy Courts with exclusive jurisdiction on the issue of dischargeability. *Brown v. Felsen,* 442 U.S. 127, 136–37, 99 S.Ct. 2205, 2211–12, 60 L.Ed.2d 767 (1979). While res judicata is not applicable to claims and defenses concerning dischargeability of a claim previously reduced to judgment in state court, *Brown,* 442 U.S. at 139–40, 99 S.Ct. at 2212–13, collateral estoppel does apply in discharge exception proceedings brought under 11 U.S.C. § 523(a). *Grogan v. Garner,* 498 U.S. 279, 284, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755 (1991). *See, also, In re Polechronis,* 186 B.R. 1, 2 (D.Mass.1995) (even though federal courts have exclusive jurisdiction regarding the ultimate determination as to whether dischargeability occurs, there is no requirement that the underlying facts must be determined by that court). Collat-

eral estoppel effect is only given to those questions actually and necessarily decided in the prior litigation. *Brown,* 442 U.S. at 140, n. 10, 99 S.Ct. at 2213, n. 10. Furthermore, in order to determine the collateral estoppel effect of a prior litigation when dischargeability is raised in a subsequent bankruptcy filing, the bankruptcy courts are not limited to the trial record. *Brown,* 442 U.S. at 139–40, 99 S.Ct. at 2212–13.

■■■ Specifically, within the First Circuit, it is proper to bar relitigation of factual or legal issues that were actually decided in previous litigation between the parties, whether or not on the same claim, pursuant to the principles of collateral estoppel. *Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26, 30 (1st Cir.1994). In order to apply collateral estoppel to a prior judgment concerning the same parties, four elements must be met: 1) the issue to be precluded must have been the same as that involved in the prior action; 2) the issue must have been actually litigated; 3) the issue must have been decided by a valid and binding final judgment; and, 4) the determination of the issue must have been essential to the judgment. *Grella,* 42 F.3d at 30. Furthermore, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and determination is essential to judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement of Judgments, 2d* § 27 (1982) quoted in *Piccicuto v. Dwyer,* 39 F.3d 37, 40 (1st Cir.1994).

■■■ Where the judgment entered is the result of a stipulation or agreement between the parties rather than a decision on the merits, it is generally accepted that the extent of the preclusive effect of the consent judgment is dependent upon the intent of the parties.[2] 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4443 (1981 and 1995 supplement).[3] Accordingly, a consent judg-

---

2. Under the laws of Puerto Rico, consent judgments are given the full force of final adjudications. *See,* title 32, Rule 34.5, Puerto Rico Rules of Civil Procedure.

3. An unsatisfied litigant may use the appeal process to avoid a judgment which might bind him in later proceedings, however, a consent judgment can only be vacated pursuant to contract defenses including fraud, ignorance, mistake, or

ment may not be given preclusive effect unless it is clearly shown that the parties intended to foreclose to future litigation on a question of fact or law. However, preclusion does not prevent independent review by the bankruptcy court of the evidence despite the consent judgment. *In re Mason,* 175 B.R. 299, 302 (Bankr.W.D.Mo.1994) *citing Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979).

It is generally held that consent judgments are intended to preclude future litigation on the claims but not the issues presented because of the lack of actual litigation. 18 *Federal Practice and Procedure* § 4443 (1981 and 1995 supplement). Furthermore, preclusion may extend to those claims that, even though not presented in the original pleadings, are included in the stipulation. 18 *Federal Practice and Procedure* § 4443 (1981 and 1995 supplement).

In struggling with the question of the preclusive effect of consent judgments in later bankruptcy proceedings, general principles have emerged. Parties are likely to be precluded from relitigating dischargeability provided that the facts underlying the exception have been explicitly included in the consent agreement, or pleadings incorporated therein, even where dischargeability of a debt was not the issue resolved in the prior litigation. *Klingman v. Levinson,* 831 F.2d 1292, 1294–95 (7th Cir.1987); *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987). However, a consent agreement which merely includes a statement that the parties agree that the debt is not dischargeable in future bankruptcy proceedings without inclusion of the underlying facts serving as the basis for the exception is not adequate for collateral estoppel to be applied to that issue. *Klingman,* 831 F.2d at 1296 n. 3 (debts are dischargeable in bankruptcy unless subject to an exception; public policy considerations prevent a debtor from contracting away the right to discharge in bankruptcy).

It appears from the stipulation in this action that the parties state unequivocally that the claim shall not be subject to discharge in future bankruptcy proceedings. However, this without more, does not preclude further litigation on the issue of dischargeability of the claim in that the facts necessary to support an exception were not contained in the stipulation and/or the consent judgment.

Furthermore, while it appears that the state court action concerned breach of contract, it is not necessarily without preclusive effect at the issue of dischargeability of the claim. Facts developed during the proceedings, admitted by the debtor and incorporated in the judgment which are pertinent to grounds for exception to discharge may be given preclusive effect. *See, e.g., In re Hansen,* 131 B.R. 167 (D.Colo.1991) *aff'd* 977 F.2d 595 (10th Cir.1992) (preclusive effect found where debtor confessed to three claims in Complaint and where supporting facts therein support exception to discharge); *Mason,* 175 B.R. at 301–03 (consent judgment should be given preclusive effect despite the absence of detailed findings by a trial court). However, because the pleadings in the state court action were not submitted, we are unable to determine if the underlying facts necessary to warrant an exception to discharge were included. Therefore, the only finding supported by the evidence before this court is that the prior litigation has preclusive effect as to the claim and the amount of damages to which AMEX–TRS is entitled.

Debtor also contends that no preclusive effect should be given to the state court judgment because debtor did not have a full and fair opportunity to litigate as he did not have the benefit of legal counsel in the first litigation. A single Eighth Circuit case is relied upon by debtor. *In re Chinnery,* 181 B.R. 954, 963–64 (Bankr.W.D.Mo.1995) (pro se debtor did not have full and fair opportunity to litigate issue of fraud in prior district court action resolved by consent and stipulation).[4]

---

mutual breach. 18 *Federal Practice and Procedure* § 4443 (1981 and 1995 supplement).

**4.** The court questions the legal analysis therein as the bankruptcy court relied upon a Eighth

Circuit case which reasoned that a pro se litigant in a prior criminal trial for disturbing the peace did not have a full and fair opportunity to litigate the issue of unlawful arrest and, therefore was

However, other courts have rejected the argument that the choice or failure of a debtor to obtain legal counsel during a prior adjudication prohibits application of collateral estoppel to the issues resolved therein. *In re Tsamasfyros,* 940 F.2d 605, 607 (10th Cir. 1991) (collateral estoppel effect of state court judgment not lessened where debtor appeared pro se in prior case). Rather, courts look to whether debtor's due process rights were observed in that he was **afforded** full and fair opportunity to litigate the issue. *See, e.g., Klemens v. Wallace,* 62 B.R. 91, 92 (D.N.M.1986) *aff'd In re Wallace,* 840 F.2d 762 (10th Cir.1988).[5] *See, also, In re Bush,* 62 F.3d 1319, 1323 (11th Cir.1995) (an issue is actually or fully litigated in the prior action where the issue was raised and the losing party had "a fair opportunity procedurally, substantively and evidentially" to defend against the allegations (quoting *Overseas Motors, Inc. v. Import Motors Ltd.,* 375 F.Supp. 499, 515 (E.D.Mich.1974), *aff'd* 519 F.2d 119 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975)). In the case before the court, the debtor's due process rights were fully protected in the state court action. Afforded all the safeguards to insure a full and fair opportunity to litigate, the fact that debtor chose not to engage in the benefit and expense of counsel or trial, for that matter, is not determinative in deciding whether collateral estoppel is applied to an issue resolved therein. *Hansen,* 131 B.R. at 170.

Furthermore, a review of Puerto Rico law has not revealed any such limitation on the application of collateral estoppel to a prior state court judgment. Title 28 U.S.C. § 1738 and the Supreme Court decision *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985), require that full faith and credit be rendered to the state court judgment and that the federal court refer to the preclusion law of the state in which the judgment was issued to determine its effect in future proceedings. *Bush,* 62 F.3d at 1323, n. 6.

The application of collateral estoppel to prior judgments was adopted and developed in Puerto Rico through the influence of the United States common law. *A & P General Contractors v. Asociacion Cana, Inc.,* 110 P.R.R. 984, 995–97 (1981). Application of the principle closely mirrors that of the federal doctrine. *See, e.g., Pereira v. Hernandez,* 83 P.R.R. 156 (1961) & *Tartak v. District Court of Puerto Rico,* 74 P.R.R. 805 (1953). Accordingly, the laws of Puerto Rico require that collateral estoppel effect be given to those facts actually resolved in a prior litigation. *Capo Sanchez v. Secretary of the Treasury,* 92 P.R.R. 817, 818 (1965). Research has not shown that the preclusive effect of a judgment is diminished where a party appeared pro se under the laws of Puerto Rico.

Additionally, AMEX–TRS relies upon admissions made by debtor during the 341 meeting. While these are certainly incriminating, these alone do not resolve the material and factual issues to support summary judgment pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4) or (a)(6).

## CONCLUSION

Accordingly, AMEX–TRS's Motion for Summary Judgment (docket No. 4) is hereby DENIED as material issues of fact remain in dispute. Clerk of the Court shall enter judgment.

Furthermore, the parties are hereby ORDERED to appear for a Pretrial Conference on June 28, 1996 at 10:30 A.M.

SO ORDERED.

---

not collaterally estopped from litigating that issue in a subsequent civil action filed by her. It appears that the determinations in each suit clearly involved different legal claims and it is not apparent that the refusal to apply collateral estoppel is solely based on the fact that the litigant appeared pro se in the first litigation. *Chinnery,* 181 B.R. at 963–64.

**5.** Courts have also been leery to overturn default judgment on the basis that the issue was not actually litigated absent debtor's demonstration of a good faith excuse for neglecting the prior proceeding and presentation of evidence to support a meritorious defense. *Polechronis,* 186 B.R. at 4. *See, also, In re Bush,* 62 F.3d 1319, 1324–25 (11th Cir.1995) (default judgment entered as a result of obstructive and dilatory conduct during discovery has preclusive effect).