**In re William F. KANE and Geraldine A. Kane, Debtors.**

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**William F. KANE, Defendant.**

**Bankruptcy No. 96–41898–JFQ. Adversary No. 96–4425.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 12, 1997.

William F. Markley, Wakefield, MA, for debtors.

William E. Morse, U.S. Securities & Exchange Com'n, Boston, MA, for plaintiff.

David M. Nickless, Nickless and Phillips, Fitchburg, MA, trustee.

*FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON PLAINTIFF'S MOTION FOR SUMMARY JUDG-MENT*

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

In this adversary proceeding, the Securities and Exchange Commission, (the "Commission") moves for summary judgment against the Debtor, William F. Kane ("Kane"). It requests that a judgment in favor of the Commission against Kane be declared nondischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code as a

debt for money obtained by fraud, and pursuant to section 523(a)(4) as a debt for fraud or defalcation while acting in a fiduciary capacity.

The documents filed in support and in opposition to the motion fail to indicate any genuine issue of material fact. They disclose that Kane was an employee of American Financial Advisors ("AFA"). In July of 1992, AFA began selling promissory notes issued by its parent company, Financial Advisors, Inc. AFA used "telemarketers" who read directly from scripts to sell the promissory notes. If a person called was interested at the end of the initial phone conversation, the call would be transferred to a sales agent who would read to the potential investor a second script and mail to him various promotional information. By February of 1994, AFA had sold approximately 146 promissory notes to at least 102 investors for an aggregate price of more than $3,500,000.00.

Kane performed the function of manager of AFA's office and was known to at least one of AFA's sales agents as AFA's "Director of Marketing." Kane was the supervisor of AFA's telemarketers; he provided them with their scripts, monitored their solicitations and determined what promotional material would be mailed. He supervised and trained some of AFA's sales agents. Kane also served as a sales agent who directly offered and sold AFA's promissory notes. All of his knowledge about the promissory notes was obtained from AFA or its principals; he did not undertake any independent inquiry or investigation of his own.

Kane represented to investors orally and in literature that the money they invested would be used only to fund collateralized automobile loans to be made to credit risk purchasers of new and used automobiles. Kane also represented to investors that any loan made by AFA would be 100% insured and that the insurance would cover a loss if someone disappeared with the vehicle. In actuality, most of the funds AFA received from the promissory note offering were converted to the personal benefit of its principals. Out of the over $3.5 million raised by AFA, only about $850,000 was used to make automobile loans. The automobile loans

made by AFA were not insured against default, and there was a strong possibility that the car which served as collateral on each loan would not be sufficient to pay the balance on the loan plus the costs of repossession and sale of the vehicle.

Kane represented to investors that AFA had reported sales and stockholder's equity of $2,349,524 and $618,000 in 1990 and $9,578,690 and $1,390,602 in 1991. In 1992 its stock was worthless. Kane authorized the shipment of promotional materials representing that AFA had commenced the promissory note program in 1990 and describing the financial performance of AFA's automobile loan operation in 1991 and 1992. In actuality, AFA did not finance its first automobile until July of 1993. Kane failed to disclose that he was paid substantial commissions for the sales of the promissory notes or that AFA was the subject of several law enforcement actions involving its promissory note offering.

Kane pled guilty to a one count information charging him with conspiracy to commit mail, wire and securities fraud in violation of 18 U.S.C. section 371. In a civil action brought against him by the Commission, he was found to have violated sections 5(a) and 17(a) of the Securities Act of 1933, 15 U.S.C. sections 77e(a), 77e(c) and 77q(a), and sections 10(b) and 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. sections 78j(b) and 77o(a). The District Court ordered Kane to disgorge $122,670, plus pre-judgment interest thereon.

## I. THE COMMISSION HAS STANDING TO BRING THIS ACTION

■ The only requirement for standing to bring a cause of action based on a violation of section 523(a)(2)(A) or 523(a)(4) is that the action must be brought by a creditor. 11 U.S.C. § 523(c) (1994). A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (1994). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment ..." 11 U.S.C. § 101(5)(A) (1994). As the holder of the disgorgement order, the Commission has a claim.

*Nathanson v. National Labor Relations Bd.,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), is the landmark Supreme Court case on this question. In *Nathanson,* the Court held that the N.L.R.B. was a creditor within the meaning of the Bankruptcy Act, and therefore had standing to bring a cause of action against a bankrupt employer for back pay owed its employees. *Id.* at 27. The court noted that the N.L.R.B. was, the "public agent chosen by Congress to enforce the National Labor Relations Act." *Id.* Much like the N.L.R.B., the Commission is the agency chosen by Congress to enforce the security laws.

In *Securities and Exch. Commission v. Maio (In re Maio),* 176 B.R. 170 (Bankr. S.D.Ind.1994), the court held that the Commission had standing in a proceeding to have a judgment against a chapter 11 debtor for securities violations declared nondischargeable. The court came to this conclusion even though the Commission does not have exclusive authority to bring suit. That the Commission will not be the ultimate recipient of the monies owed does not effect its standing. *Id.* at 171. Denial to the Commission of the right to bring nondischargeability complaints would unduly hinder its ability to enforce the Securities Act. *Id.* at 172.

*Securities and Exch. Comm'n v. Cross (In re Cross),* 203 B.R. 456 (Bankr.C.D.Cal.1996), is the only decision holding the Commission does not have standing in a nondischargeability action. That case is distinguishable from the present case in that the prior court order there required the disgorgement to be paid to a receiver, not the Commission. *Id.* at 457. As a result, the court reasoned that the Commission had no pecuniary interest because it was the receiver whose role was analogous to the N.L.R.B. in *Nathanson. Id.* at 458. Had it been the Commission and not the receiver who was awarded the disgorgement, the court indicated it would have ruled that the Commission had standing as a creditor.

## II. COLLATERAL ESTOPPEL AP-PLIES

■ A party wishing to invoke the doctrine of collateral estoppel must pass a four-prong test. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994). The requirements are: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment." *Id.* The court in *Grella* explained that an issue may be "actually decided" even if it is not explicitly decided, for it may have "... constituted, logically or practically, a necessary component of the decision rendered in the prior litigation." *Id.* at 31.

■ Kane appeared *pro se* in the civil action. He did so, he says, because he could not afford counsel. He contends that collateral estoppel cannot be invoked because, in the absence of counsel, the issue was not fully and fairly litigated. In *American Express Travel Related Servs. Co., Inc. v. Hernandez (In re Hernandez)*, 195 B.R. 824, 830 (Bankr.D.P.R.1996), the court held that the absence of counsel does not preclude application of collateral estoppel. The court explained that whether a matter has been "fully and fairly" litigated is whether the "debtor's due process rights were observed ill that he was afforded a full and fair opportunity to litigate the issue." *Id.* I agree.

In *Glosser v. Posner (In re Boesky Secs. Litig.)*, 848 F.Supp. 1119, 1124 (S.D.N.Y. 1994), the court held that collateral estoppel can be invoked against a party who had every initiative to litigate and defend himself in the first case vigorously. In our case, Kane was facing a substantial fine in the civil case and prison time in the criminal case, so he certainly had the incentive to defend himself vigorously. Before pleading guilty in the criminal case, the consequences of his actions were made clear to him. The pleading that he signed was explicit in explaining that "by pleading guilty he waives and gives up those [trial] rights and that if a plea of guilty is accepted by the court, there will not be a further trial of any kind." As was stated by the court in *Goff v. Internal Revenue Serv. (In re Goff)*, 180 B.R. 193, 200 (Bankr. W.D.Tenn.1995), it is important not to let the debtor "create an issue of material fact by taking positions inconsistent with his prior guilty plea or stipulations entered as part of that guilty plea."

■ For a claimant to have a debt declared nondischargeable under section 523(a)(2)(A), the claimant must satisfy a two-prong test. *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 10 (1st Cir.1994). A violation of section 523(a)(2)(A) requires a showing that the debtor knowingly or recklessly made a material representation with intent to deceive the creditor and that the creditor relied on the misrepresentation to its detriment. *Id.* It is clear that when the doctrine of collateral estoppel is invoked in this case the Commission has proven both elements.

■ What is required to be proven here was explained by the court in *Federal Trade Comm'n v. Austin (In re Austin)*, 138 B.R. 898, 907 (Bankr.N.D.Ill.1992), "Reckless, misrepresentation ... occurs when a person asserts false information as if it were true in spite of the fact that he or she recognizes a possibility, more or less great, that the information may be false." *In re Austin* at 907. By establishing that Kane consciously avoided knowledge of the truth and made false statements to potential investors, the Commission has satisfied this prong of the test.

In the criminal case, Kane plead guilty to conspiracy to commit mail, wire and security fraud. Both mail fraud, 18 U.S.C. Section 1341, and wire fraud, 18 U.S.C. Section 1343, share the same first two elements. As indicated in the plea agreement, both require: a scheme or artifice to defraud or obtain money or property by false and fraudulent pretenses, representations or promises, and knowing participation in the scheme or artifice to defraud with knowledge of its fraudulent nature and with intent to defraud.

The judgment in the civil action also satisfies the first prong of the test. The court granted the Commission summary judgment, finding that Kane violated section 17(a) of the

1933 Securities Act, as well as section 10(b) of the 1934 Securities and Exchange Act.

Section 17(a) provides:

> It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Rule 10b–5 under the 1934 Securities and Exchange Act provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange,
>
> (1) to employ any device, scheme, or artifice to defraud,
>
> (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

The issue whether Kane acted "knowingly" was litigated in the civil action. In *Aaron v. Securities and Exch. Comm'n,* 446 U.S. 680, 695, 100 S.Ct. 1945, 1954–55, 64 L.Ed.2d 611 (1980), the court held that scienter was a necessary element of a violation of Commission Rule 10b–5 promulgated under section 10(b) of the Securities Exchange Act of 1934.

Kane was found to have also violated this Rule in the civil action.

Section 523(a)(2)(A) requires that the creditor justifiably rely on the misrepresentation. *Field v. Mans,* 516 U.S. 59, ——, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995). The standard of justifiable reliance is less stringent than that of "reasonable reliance". *Id.* at ——, 116 S.Ct. at 439. The creditor does not have to investigate a situation even if a prudent man in the same situation would do so. *Id.* at ——, 116 S.Ct. at 446. Because fraudulent misrepresentation is an intentional tort, contributory negligence is not a factor. *Id.* at ——, 116 S.Ct. at 444. Only an obvious false statement may not be relied upon. *Id.* at ——, 116 S.Ct. at 444.

■ Kane was not dealing with sophisticated investors. Very few satisfied the Commission's standards for "accredited" investors. Moreover, "cold calls" were not the only contact that AFA had with its investors. After the initial call, the potential investors were transferred to a salesman and sent information. They were also mailed brochures which contained information about the company and the risk involved in their investments. The investors had no reason to suspect that they were being defrauded. Therefore, their reliance was justifiable.

## III. CONCLUSION

The judgment in the civil action and the guilty plea in the criminal action each make out a fraud case under section 523(a)(2)(A) under the doctrine of collateral estoppel. It is therefore unnecessary to determine whether the debt is nondischargeable under section 523(a)(4). A separate judgment has entered.