In re Robert D. HODGE, Debtor.

**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Robert D. HODGE, Defendant.**

**Bankruptcy No. 96–56040.
Adversary No. 96–0564.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Feb. 4, 1998.

Scott B. Hamilton, Chicago, IL, for Plaintiff.

Louis W. Cennamo, Columbus, OH, for Defendant.

### ORDER ON MOTION FOR SUMMARY JUDGMENT FILED BY PLAINTIFF SECURITIES AND EXCHANGE COMMISSION

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

The matters before the Court are the Motion for Summary Judgment filed by Plaintiff Securities and Exchange Commission ("SEC") against Defendant Robert Hodge, the Debtor in this Chapter 7 bankruptcy proceeding ("Hodge"); and Hodge's Response and Motion for Summary Judgment. By its motion, the SEC requests that this Court grant summary judgment in its favor with respect to the dischargeability of Hodge's disgorgement debt and civil penalty debt. Hodge argues that the relevant debts are dischargeable. The Court has reviewed the pleadings filed with respect to these matters, and has concluded that there are no genuine issues of material fact to be decided by the Court. This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### I. *Findings of Fact*

On April 12, 1993, the SEC filed a complaint in the United States District Court for the Southern District of Ohio (Case No. C–2–93–389) against Midwest Investments, Inc. ("Midwest"), Hodge, and various other defendants ("the District Court Action"). The District Court Action included 11 counts of alleged violations of the Securities Act of 1933 and Securities Exchange Act of 1934. On November 27, 1996, the SEC filed the within adversary proceeding against Hodge asserting that the judgment for disgorgement in the amount of $791,625.00 and for civil penalties in the amount of $25,000.00 entered against Hodge in the District Court Action on March 16, 1995, are non-dischargeable under 11 U.S.C. § 523(a)(2)(A), and § 523(a)(7), respectively. Hodge filed an opposition to the SEC's motion for summary judgment asserting initially that the SEC lacked standing to pursue a non-dischargeability action, and further that the District

Court Action was insufficient to provide legal justification for excluding the disgorgement and civil penalty judgments from discharge, and that the doctrine of collateral estoppel did not apply in this case.

The SEC attached copies of various pleadings and documents to its motion for summary judgment, including its complaint against Midwest, Hodge and other defendants in the District Court Action, the "Final Judgment and Order of Permanent Injunction ..." entered by the district court on March 16, 1995 in the District Court Action, the summary judgment order entered March 31, 1994 in the District Court Action, and the "Findings of Facts, Conclusions of Law and Preliminary Injunction Order" entered May 18, 1993, in the District Court Action. The district court's "Findings of Facts, Conclusions of Law and Preliminary Injunction Order" entered May 18, 1993, included findings that Hodge and other defendants engaged in a fraud on the investing public. The order of the district court entered March 31, 1994 granted summary judgment in the District Court Action in favor of the SEC, and against Hodge and other defendants, specifically finding that the defendants had violated the antifraud provisions of the federal securities laws. The "Final Judgment and Order of Permanent Injunction and Other Equitable Relief" entered by the district court on March 16, 1995, included findings that Hodge and other defendants had "engaged in violations of the federal securities laws involving fraud and manipulation and their violations directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." March 16, 1995 Order, p. 3, ¶ 8.

As a result of its findings, the district court ordered Hodge to pay $791,625.00 in disgorgement, jointly and severally with the other defendants in the District Court Action, and in addition ordered Hodge to pay a $25,000.00 civil penalty to the United States Government. These findings were based on the actions of Hodge and the other defendants between January and April, 1993. Hodge and the other defendants were found to have participated in sales of 364,800 shares of the common stock of Reitz Data

Communications, Inc. at artificially inflated and manipulated prices, that various misstatements were made, and that markups were excessive. In particular, in its Order entered May 18, 1993, the district court found as follows:

(1) "The Defendants charged investors in Reitz stock excessive undisclosed markups of 152% in 493 transactions, 170% in 291 transactions and 188% in 28 transactions." (May 18, 1993 Order, p. 15, ¶ 1.)

(2) "The Defendants have made misstatements and omitted to state material facts to investors about the offer and sale of Reitz Securities. Specifically, they did not tell customers that the price Midwest charged did not reasonably reflect the prevailing market price for Reitz stock." (May 18, 1993 Order, p. 15, ¶ 2.)

(3) "The Defendants have made misstatements and omitted to state material facts to investors about the offer and sale of Reitz Securities ... These misstatements and omissions operated as a fraud and deceit about the nature of the market." (May 18, 1993 Order, p. 16, ¶ 7.)

(4) "The Defendants knew or, at a minimum, were reckless in not knowing that the markups Midwest charged in the sales of Reitz stock were excessive. They also knew that they had not based the price Midwest charged on a free, open and competitive market. They knew that the price was not reasonably related to the prevailing market price. Thus, they acted with scienter." (May 18, 1993 Order, p. 16, ¶ 8.)

By its Order entered March 31, 1994, the district court granted the SEC's motion for summary judgment against Hodge and other defendants, specifically finding as follows:

1. "[D]efendants' conduct was egregious and ... both disgorgement and civil penalties are necessary to achieve justice in this case. Specifically, Defendants perpetuated a grave fraud on the investing public. Defendants manipulated, and in reality controlled, the price of Reitz Data Communications, Inc. The prices defendants selected had little if any relation to the actual value of the stock. Defendants' omissions and misrepresentations concealed from investors the enormous profits to de-

fendants included in the price." (March 31, 1994 Order, p. 3, ¶ 1.)

2. "[T]he Court finds that the nature of the fraud was apparent ... The Court finds that disgorgement is an appropriate and necessary remedy in this case. Based upon the personal involvement and knowledge of each defendant, defendants shall be jointly and severally liable for the amount of $791,625. The Court also finds that in light of their egregious behavior, the individual defendants shall be subject to civil penalties ... as follows: against defendants Robert D. Hodge and Michael J. Eberle in the amount of $25,000 each ... The Court finds that given the scope and nature of defendants' activities, and the profits they reaped, these amounts are the least severe civil penalties that would likely deter them from future misconduct." (March 31, 1994 Order, p. 3, ¶¶ 2 and 3, and p. 4, carryover ¶.)

On March 16, 1995, the District Court entered its "Final Judgment and Order of Permanent Injunction and Other Equitable Relief." That Order made additional findings with respect to the actions of Hodge, Midwest, and the other defendants in the District Court Action. In particular, in its Order entered March 16, 1995, the District Court found that Hodge: (1) engaged in acts, transactions, practices and courses of business which constitute violations of [the antifraud provisions of the federal securities laws] (p. 2, ¶ 3); (2) "That ... Hodge ... in connection with the transactions in Reitz stock should not be allowed to retain funds which were the product of [his] fraudulent activities." (p. 2 ¶ 6); (3) "That Hodge, based upon [his] personal knowledge and involvement, and [along with the other individual defendants] as Defendant Midwest's alter ego, [is] jointly and severally liable ... for disgorgement of Defendant Midwest's trading profits of $791,625." (p. 3, ¶ 7); and (4) "That ... Hodge ... [has] engaged in violations of the federal securities laws involving fraud and manipulation and (his) violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. The imposition of civil penalties are thus appropriate against ... Hodge ... "(p. 3, ¶ 8).

Based on the findings of the district court, which are incorporated by this reference, Hodge and the other defendants were ordered to disgorge $791,625, and Hodge was individually ordered to pay a $25,000 civil penalty (March 16, 1995 Order, p. 9, ¶¶ VIII and IX). The district court ordered Hodge to pay the disgorgement to the Clerk of the United States District Court for the Southern District of Ohio, and to pay his civil penalty to the United States Treasury (March 16, 1995 Order, pp. 9–10, ¶ X). This Court further finds that the affidavit of counsel for the SEC, filed as Exhibit K to the SEC's Motion for Summary Judgment, indicates that Hodge has failed to pay either the disgorgement amount or the civil penalty. Hodge has not disputed this assertion.

## II. *Conclusions of Law*

Hodge asserts three primary defenses to the SEC's Motion for Summary Judgment. Hodge asserts that the SEC does not have standing to pursue a dischargeability action in this Court; that the disgorgement debt does not qualify for an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A); and that the civil penalty debt should not be excepted from discharge pursuant to 11 U.S.C. § 523(a)(7).

The Court is not impressed with Hodge's argument concerning the standing of the SEC. With one minor exception, case law appears to be unanimous that the SEC qualifies as a "creditor" with the requisite standing to bring a cause of action to determine dischargeability of disgorgement and civil penalty debts. In *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952), the Supreme Court held that the National Labor Relations Board qualified as a creditor under the Bankruptcy Act, and had standing to pursue an action against a bankrupt employer for back pay owed to its employees, stating that the National Labor Relations Board was the "public agent chosen by Congress to enforce the National Labor Relations Act." *Nathanson,* 344 U.S. at 27, 73 S.Ct. at 82. The SEC similarly has standing to pursue a debtor in bankruptcy as to dischargeability of dis-

gorgement and civil penalty judgments as the public agent chosen by Congress to enforce the federal securities laws.

This case is very similar to *Securities and Exchange Commission v. Maio (In re Maio)*, 176 B.R. 170 (Bankr.S.D.Ind.1994). In *Maio*, the bankruptcy court considered the SEC's complaint against the debtor to have a disgorgement judgment for securities violations declared non-dischargeable under 11 U.S.C. § 523(a)(2)(A). The *Maio* court ruled that the SEC had standing to prosecute the dischargeability action even though it would not be the recipient of the monies owed by the debtor under the disgorgement judgment. *Maio*, 176 B.R. at 171. The court found that denying the SEC standing to bring complaints objecting to dischargeability of such debts would unduly hinder its ability to enforce the securities laws. *Maio*, 176 B.R. at 172. The ruling of the court in Maio was adopted by the bankruptcy court in *Securities & Exchange Commission v. Kane (In re Kane)*, 212 B.R. 697 (Bankr.D.Mass.1997). The Court in *Kane* found that, as in *Maio*, the SEC had standing to bring a cause of action asserting that a disgorgement debt was non-dischargeable under 11 U.S.C. § 523(a)(2)(A). In a comparable proceeding, the FTC has been found to have standing under 11 U.S.C. § 523(c) as the representative of defrauded individuals. *In re Austin*, 138 B.R. 898 (Bankr.N.D.Ill.1992).

■ This Court concurs with the conclusion of the courts in *Maio* and *Kane*. The SEC is the agency required to enforce the securities laws, and denying the SEC standing to pursue dischargeability actions with respect to disgorgement judgments for securities laws violations would unduly hinder its ability to comply with its Congressional mandate. Even though the individual investors that were defrauded by a debtor in bankruptcy might have a private right of action, the Court finds it appropriate for this issue to be raised and prosecuted by the SEC. The fact that private parties may also have causes of action does not affect the standing of the SEC to enforce the securities laws through non-dischargeability actions. *Maio*, 176 B.R. at 171.

11 U.S.C. § 523(c)(1) seems to contain the only standing requirement for dischargeability actions. An action to exclude a debt from discharge may be brought "on request of the creditor to whom such debt is owed ..." 11 U.S.C. § 523(c)(1). The judgments entered in the District Court Action were rendered against Hodge and the other defendants, and in favor of the SEC. Payment of the disgorgement and civil penalty judgments were to be made to the U.S. District Court and U.S. Treasury, respectively. Accordingly, this Court finds that the SEC, as the public agent responsible for enforcing the securities laws, comes within the ambit of a creditor to whom the disgorgement judgment is owed.

■ The only case bringing the SEC's standing into question is *Securities & Exchange Commission v. Cross (In re Cross)*, 203 B.R. 456 (Bankr.C.D.Cal.1996). In *Cross*, a prior order of the district court required the defendant to disgorge monies to a receiver, not to the district court or United States Treasury. This Court has already concluded that the SEC has standing to pursue the dischargeability action even though it would not be the ultimate recipient of the disgorgement. A duly appointed receiver would have standing to pursue the dischargeability of a disgorgement debt, as would the individual investors injured by the actions underlying the disgorgement order. But that would not limit the SEC's standing to pursue dischargeability of disgorgement debts in order to carry out its Congressional mandate to enforce the securities laws. *Cross* is therefore not persuasive. This Court concludes that the SEC has standing to pursue the dischargeability of the disgorgement debt and the civil penalty debt.

■ Debtor argues that collateral estoppel does not preclude him from disputing dischargeability of the disgorgement and civil penalty judgments. In order for the SEC to invoke the doctrine of collateral estoppel, it must demonstrate that: (1) the precise issue has been raised in a prior proceeding; (2) the issue must have been actually litigated in a prior proceeding; and (3) the determination of the issue must have been necessary to the outcome of a prior proceeding. *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981).

The United States Supreme Court has stated that "collateral estoppel principles ... apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ["collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)"]; See also *In re Bursack,* 65 F.3d 51, 53 (6th Cir.1995).

Upon a review of the record and the findings made by the Court in the District Court Action, this Court finds that the final judgment in the District Court Action establishes actual fraud for the purposes of 11 U.S.C. § 523(a), and that collateral estoppel applies in this case. There is no question that a disgorgement judgment, such as the one obtained by the SEC in the District Court Action relating to securities fraud, may preclude a defendant from relitigating the issue of his fraud in bankruptcy court. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). As set forth above in this Court's Findings of Fact, the judgment in the District Court Action specifically found that Hodge was guilty of fraud, and that finding provided the basis for the disgorgement judgment. Section 523(a)(2)(A) precludes from discharge any debt for, among other things, money obtained by false pretenses, a false representation, or actual fraud. The judgment in the District Court Action satisfies the requirement that the issue be raised in the prior proceeding. It is obvious to this Court that the issues of whether Hodge made material misrepresentations and committed actual fraud with respect to the offer and sale of Reitz Communications securities was both raised and actually litigated in the District Court Action. Under the recent Sixth Circuit case of *In re Calvert,* 105 F.3d 315 (6th Cir.1997), the Sixth Circuit Court of Appeals found that even a true default judgment could provide a sufficient basis for application of collateral estoppel. Clearly, in a case where the issue of fraud was fully litigated, as occurred in the District Court Action, collateral estoppel is appropriate.

The Court also finds that the determination of the issue of fraud in the District Court Action was necessary to the outcome of that action. The United States District Court found that Hodge violated § 17(a) of the Securities Act of 1933, and § 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934. Such conclusions by the district court were necessarily predicated on findings that Hodge: "(1) employed devices, schemes or artifices to defraud; (2) made untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) engaged in any acts, practices or courses of business which operate or would operate as a fraud or deceit upon a person." 15 U.S.C. § 77q(a)(1)–(3); 15 U.S.C. § 78j(b); and 17 C.F.R. § 240.10b–5. This Court therefore finds that the determination of the issue of fraud was necessary to the outcome of the District Court Action.

It is evident that the judgment of the district court satisfies the requirements for applying collateral estoppel as set forth in *Spilman.* See also *Austin,* 138 B.R. at 910 [Judgment in favor of FTC was collateral estoppel in subsequent dischargeability proceeding]. The court in *Kane,* under circumstances similar to those in the present case, found that collateral estoppel precluded the debtor from disputing dischargeability of a disgorgement debt in his subsequent bankruptcy proceeding. The court in *Kane* thoroughly reviewed the requirements to hold a debt nondischargeable under 11 U.S.C. § 523(a)(2)(A), and found that the disgorgement judgment obtained by the SEC in the prior district court action satisfied the requirements of 11 U.S.C. § 523(a)(2)(A). In the present case, this Court finds that the judgment in the District Court Action satisfies the requirements of 11 U.S.C. § 523(a)(2)(A). As set forth above in this Court's findings of fact, and as set forth in the orders and judgments in the District Court Action, Hodge was found guilty of obtaining money by false representations and actual fraud. The findings in the District Court Action are sufficient to meet the requirement that the individual investors "justifiably relied" on the statements made by Hodge. *See Field v. Mans,* 516 U.S. 59, 73–76, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995) [The standard of "justifiable" reliance is less

stringent than "reasonable" reliance]. This Court therefore finds that Hodge's disgorgement judgment debt in the amount of $791,-625.00 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

■ The SEC also asserts that the $25,000 civil penalty debt against Hodge, set forth in the District Court Action, is nondischargeable under 11 U.S.C. § 523(a)(7). A discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss ..." 11 U.S.C. § 523(a)(7). The findings in the District Court Action make it clear that the $25,000 civil penalty constitutes a "penalty" payable to or for the benefit of a governmental unit, being the United States Treasury in this case, pursuant to 15 U.S.C. §§ 77t(d) and 78u(d). The civil penalty is for the benefit of the United States, and is in no way related to compensation for actual pecuniary loss. *See* March 31, 1994 Order, pp. 3–4, carryover ¶. The Court therefore finds the $25,000 civil penalty against Hodge to be nondischargeable pursuant to 11 U.S.C. § 523(a)(7).

III. *Conclusion*

For the reasons set forth above, the Court finds that the Motion for Summary Judgment filed by the Securities and Exchange Commission is well taken, and is GRANTED. The disgorgement debt against Robert D. Hodge in the amount of $791,625.00 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), and the $25,000 civil penalty debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(7). The Motion for Summary Judgment filed by Hodge is DENIED in all respects.

IT IS SO ORDERED.