In re Fernando M. EGEA, Debtor.

**Alexis Herman,[1] Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Fernando M. Egea, Defendant.**

**Bankruptcy No. 96–20099.
Adversary No. 96–6037.**

United States Bankruptcy Court,
D. Kansas,
Kansas City Division.

March 24, 1999.

---

1. The original plaintiff in this adversary proceeding was the then Secretary of Labor, Robert B. Reich. His successor, Alexis Herman, has been automatically substituted as plaintiff under FED.R.CIV.P. 25(d)(1) and FED. R.BANKR.P. 7025.

Rachel Parsons and Evert H. Van Wijk of the United States Department of Labor, Kansas City, MO, for Plaintiff, the Secretary of Labor.

William E. Metcalf of Metcalf & Justus, Topeka, Kansas, for Debtor–Defendant, Fernando M. Egea.

## *MEMORANDUM*

JOHN T. FLANNAGAN, Bankruptcy Judge.

### On Order Overruling Defendant Egea's Motion To Dismiss [2]

The defendant and Chapter 7 debtor, Dr. Fernando M. Egea, moves to dismiss for lack of standing the dischargeability complaint of the Secretary of Labor.[3] Dr. Egea relies on § 523(c)(1) of the Bankruptcy Code that limits standing to bring certain dischargeability actions to "the creditor to whom such debt is owed." In the underlying adversary proceeding, the Secretary of Labor seeks a dischargeability determination under 11 U.S.C. § 523(a)(4) for defalcation in a fiduciary capacity. The Secretary's complaint alleges that Dr. Egea breached his fiduciary duties to employee benefit plans and violated the Employee Retirement Security Act (ERISA).

2. The plaintiff, the Secretary of Labor, appears by her attorneys, Rachel Parsons and Evert H. Van Wijk of the United States Department of Labor, Kansas City, Missouri. The movant and debtor-defendant, Fernando M. Egea, appears by his attorney, William E. Metcalf of Metcalf & Justus, Topeka, Kansas.

3. The parties recognize and the Court independently finds that this is a core proceeding under 28 U.S.C. § 157(b)(2)(I); and that the Court has jurisdiction under 28 U.S.C. § 1334, and under the general reference order of the District Court effective July 10, 1984, in D. Kan. Rule 83.8.5.

4. In *Reich v. Daniels (In re Daniels)*, 18 Employee Benefits Cas. 1399 (BNA), 1994 WL

### Issue

Dr. Egea's motion to dismiss presents the issue of whether the Secretary of Labor, as a government agency, has standing to seek a § 523(a)(4) dischargeability determination for funds the trustee allegedly misappropriated through fiduciary breach from employee benefit plans protected by ERISA. Resolution of this issue depends on the Secretary of Labor's qualification as "the creditor to whom such debt is owed" under § 523(c)(1) and on public policy.

Although numerous cases deal with the standing of government agencies in dischargeability proceedings, no case specifically addresses the standing of the Secretary of Labor in the present context.[4] The parties acknowledge and research confirms that the Secretary of Labor's standing to maintain the dischargeability complaint presents an issue of first impression.

### Background

In connection with his medical practice, Dr. Egea sponsored and administered pension and profit sharing plans protected by the Employee Retirement Security Act (ERISA).[5] Acting under statutory powers, the Secretary of Labor investigated Dr. Egea's management of and transactions with the employee benefits plans.[6] The investigation revealed violations of ERISA. Consequently, the Secretary brought an adversary proceeding in Dr. Egea's Chapter 7 bankruptcy case.

470213 (Bankr.D.Mass.1994), the Secretary of Labor prevailed without any challenge to standing in a § 523(a)(4) dischargeability action for breach of fiduciary duties to ERISA employee benefit plans. Also several cases have considered the timeliness of the Secretary's dischargeability complaint without reaching the Secretary's standing to bring the action. *E.g., Reich v. Davidson Lumber Sales, Inc.*, 154 B.R. 324, 329–34 (D.Utah 1993); *Dole v. Grant (In re Summit Corp.)*, 109 B.R. 534, 536–38 (D.Mass.1990).

5. Complaint, Doc. 1, 4/15/96, ¶¶ 7–8.

6. Complaint at ¶¶ 4–5.

The Secretary's complaint alleges that, while acting as the plans' trustee, Dr. Egea converted plan assets; made unauthorized loans to himself from plan trust funds; made unauthorized withdrawals to himself from plan bank accounts; failed to maintain proper plan documents; and filed false, inaccurate reports.[7] According to the complaint, Dr. Egea's actions and omissions constitute defalcation in a fiduciary capacity under 11 U.S.C. § 523(a)(4). The Secretary accordingly requests that funds owed to the plans plus interest, which amount to $1,601,290.81, be declared nondischargeable.[8]

The Secretary timely filed the sole complaint seeking to except from discharge the money owed to the benefit plans. None of the plan participants filed for redress in the bankruptcy proceedings.[9]

The Secretary recognizes that the Department of Labor is owed no funds in its own right.[10] Although no judgment has been entered against Dr. Egea, the Secretary plans to file suit under applicable ERISA civil enforcement provisions. In the ERISA litigation, the Secretary would seek an order compelling Dr. Egea to reimburse the benefit plans. If he fails to comply, the Secretary would seek enforcement in a contempt of court proceeding.

7. Complaint at ¶¶ 9–25.

8. Complaint at ¶¶ 26–27; Proof of Claim, U.S. Department of Labor, 4/15/96.

9. Final Pretrial Conference Order, Doc. 41, 6/20/97, § 6B Stipulation.

10. Final Pretrial Conference Order at § 6C Stipulation.

11. See Grogan v. Garner, 498 U.S. 279, 284 n. 9, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (nonbankruptcy law that creates a substantive claim determines whether a claim exists in bankruptcy).

12. The text of 11 U.S.C. § 523(c)(1) provides:
Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection

## STATUTORY FRAMEWORK

Federal statutes frame the issue. The Bankruptcy Code governs the challenge to dischargeability of a debt, including the Secretary's standing. ERISA determines whether the Secretary has a debt or a claim subject to a dischargeability determination.[11]

### A. The Bankruptcy Code

The exceptions to discharge in 11 U.S.C. § 523(a)(4) apply to any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Establishing a standing requirement, § 523(c)(1) specifies who may request a dischargeability determination.[12] According to that provision, "the creditor to whom such debt is owed" must request a dischargeability determination for certain debts founded on fraud and tort, including debts for fiduciary defalcation in § 523(a)(4). Unless "the creditor to whom such debt is owed" files an adversary proceeding, the debts in the categories listed in § 523(c)(1) are automatically discharged. Setting a statute of limitations, FED.R.BANKR.P. 4007(c) requires the creditor who seeks a § 523(c) dischargeability determination to file the complaint within 60 days of the first scheduled § 341 creditors' meeting.[13]

(a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15) as the case may be, of subsection (a) of this section.

13. FED.R.BANKR.P. 4007(c) provides in pertinent part: "A complaint to determine the dischargeability of any debt pursuant to Sec. 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." The purpose this rule is to further the prompt administration of bankruptcy estates and to further fresh start goals by allowing debtors to enjoy finality and certainty of relief from financial distress as quickly as possible. Marino v. Classic Auto Refinishing, Inc. (In re Marino), 213 B.R. 846, 854 (9th Cir. BAP 1997).

The Bankruptcy Code lays a definitional foundation for the meaning of "the creditor to whom such debt is owed." "Creditor" means an "entity that has a claim against the debtor that arose at the time of or before the order for relief."[14] "Debt" and "claim" have correlative meanings. A "debt" is a "liability on a claim."[15] A "claim" is either a "right to payment" or a "right to an equitable remedy for the breach of performance if such breach gives rise to the right of payment."[16]

## B. The ERISA Civil Enforcement Provisions

The Secretary's claim or debt is founded on nonbankruptcy law. The civil enforcement provisions of ERISA create a cause of action for breach of fiduciary duties to an employee benefit plan. The fiduciary's liability for breach of duty is set forth in 29 U.S.C. § 1109(a):[17]

### Liability for breach of fiduciary duty

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

Holding the fiduciary personally liable to the plan, this provision requires the breaching fiduciary to restore any losses and to return any profits. In addition, a catch-all clause allows equitable and appropriate remedial relief.

The standing provisions for ERISA actions in 29 U.S.C. § 1132 state who may bring civil actions and specify what types of actions the parties may pursue. Section 1132(a)(2)[18] empowers the Secretary of Labor, as well as plan participants, beneficiaries, and fiduciaries, to bring actions for fiduciary breach:

### Civil enforcement

(a) Persons empowered to bring a civil action

A civil action may be brought—

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]

## OVERVIEW OF GOVERNMENT AGENCIES' STANDING UNDER 11 U.S.C. § 523(c)

### A. Origin

Case law on a government agency's standing to seek a dischargeability determination originates with the United States Supreme Court's opinion in *Nathanson v. National Labor Relations Board*,[19] which was decided in the proof-of-claim context under the Bankruptcy Act. *Nathanson* involves the National Labor Relation Board's standing to file a bankruptcy claim on behalf of employees denied pay for the debtor's unfair labor practices. The referee's disallowance of the Board's proof of claim for the back pay award was reversed on appeal. Finding the Board to be a creditor, the Supreme Court stressed the Board's designated role as enforcer of the National Labor Relations Act and the societal importance of protecting and defend-

14. 11 U.S.C. § 101(10)(A).

15. 11 U.S.C. § 101(12).

16. 11 U.S.C. § 101(5).

17. Before its codification, the statute was cited as ERISA § 409(a).

18. Before its codification, the statute was cited as ERISA § 502(a)(2).

19. *Nathanson v. National Labor Relations Board*, 344 U.S. 25, 26–27, 73 S.Ct. 80, 97 L.Ed. 23 (1952).

ing the injured employees. Public policy considerations figured prominently in *Nathanson:*

> The Board is the public agent chosen by Congress to enforce the National Labor Relations Act. A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for the losses suffered on account of an unfair labor practice. Congress has made the Board the only party entitled to enforce the Act. A back pay order is a command to pay an amount owed the Board as agent for the injured employees. The Board is therefore a claimant in the amount of the back pay.[20]

### B. Strict, Literal View

Arguing that the Secretary of Labor has no standing to proceed with the dischargeability action, Dr. Egea advocates a strict, literal construction of 11 U.S.C. § 523(c). In support, Dr. Egea relies extensively on *In re Cannon*,[21] which adopts this literal construction to deny standing to a state bringing a dischargeability proceeding. In *In re Cannon*, the Eighth Circuit held that the state of Missouri lacked standing to challenge the dischargeability of debts for restitution orders stemming from state-initiated litigation under the state merchandising practices act.[22] The state statutes authorized the attorney general to obtain a court-ordered injunction to prohibit the unlawful practices, and they also allowed the court to order restitution for the victims. Nevertheless, the statutes were silent on the state's right to sue on behalf of the victims. The statutes contained no explicit provision authorizing the state attorney general to collect or enforce the court-ordered restitution. The result-

ing restitution orders were issued in the names of the victims. In denying Missouri standing, the Eighth Circuit emphasized that neither the statutes nor the court's restitution order specifically permitted the Missouri attorney general to collect the restitution orders on behalf of the victims. As a result, the Eighth Circuit reasoned that Missouri was not owed any debt and could not claim standing as a "creditor to whom such debt is owed."[23]

Under the strict analysis in *In re Cannon*, Missouri could not fulfill the "claim" component of § 523(c). The Eighth Circuit read the state merchandising practices act to limit the attorney general's relief to an injunction prohibiting the invalid practices. This injunctive relief failed to qualify as a "right to payment" or as "a right to an equitable remedy for breach of performance ... giv[ing] rise to a right of payment."[24] Consequently, Missouri had no "claim" under the Bankruptcy Code.[25]

Further, *In re Cannon* narrowly interpreted *Nathanson* to deny the Missouri attorney general standing as enforcer of the state legislation. From the observation in *Nathanson*—The National Labor Relations Board was the only party entitled to enforce the Act[26]—*In re Cannon* derived the exclusive party requirement for government standing. According to the reasoning in *In re Cannon*, because the Missouri merchandising statutes provided the victims with a private right of action, the attorney general was not the only party entitled to enforce the statutes and was, therefore, precluded from filing a dischargeability action on behalf of the victims.[27]

Research reveals one case that applied and advanced *In re Cannon's* strict, literal

---

**20.** *Id.* at 27, 73 S.Ct. 80(internal citations omitted).

**21.** *Missouri ex rel. Ashcroft v. Cannon (In re Cannon)*, 741 F.2d 1139 (8th Cir.1984).

**22.** *Id.* at 1141.

**23.** *Id.*

**24.** 11 U.S.C. § 101(5).

**25.** *In re Cannon*, 741 F.2d at 1141–42.

**26.** *Nathanson*, 344 U.S. at 27, 73 S.Ct. 80.

**27.** *In re Cannon*, 741 F.2d at 1142.

view on government standing. *In re Lacy* [28] denied Oregon § 523(c) standing to object to the dischargeability of debts owed investors under the state securities laws. The Oregon securities laws failed to explicitly grant the state power to collect restitution for the victims or to enforce restitution orders. The *Lacy* bankruptcy court read *In re Cannon* to hold that a state lacks standing if it is not empowered to enforce the restitution orders. Consequently, the state has no "right to payment" and no "claim"; it is not a "creditor"; and cannot be a "creditor to whom such debt is owed" under the literal words of § 523(c). *In re Lacy* refused to resort to any public policy considerations or the *parens patriae* doctrine when the literal requirements of the standing provision were not met. [29]

## C. Flexible, Liberal View

For the standing requirements of § 523(c), the Secretary of Labor urges a flexible, liberal view that evokes public policy considerations of *Nathanson*. Numerous government standing cases adopt this approach.

### 1. State and Local Government Agencies

 Many cases involving the standing of state or local government agencies refuse to apply the § 523(c) requirements literally to deny standing. [30] In rejecting the strict view, courts base standing on various combinations of theories. They distinguish the facts of *In re Cannon*. They take a broad, expansive view of the § 523(c) standing requirements of "claim" and "creditor" and liberally construe state and local civil enforcement provisions. They entertain such public policy arguments as (1) the inadvisability of allowing bankruptcy courts to become havens for wrongdoers; (2) the incongruity between allowing actions to enforce state regulatory powers under the automatic stay exception, but disallowing standing to challenge the resulting debt under the dischargeability provisions. They rely on the *parens patriae* doctrine that confers standing on states seeking to protect quasi-sovereign interests. [31]

### 2. Federal Government Agencies

When the issue concerns the standing of federal government agencies, cases rely on the public policy analysis stemming from *Nathanson* rather than on the strict construction of *In re Cannon*. Under this analysis, courts ascertain whether Congress has granted the federal agency civil enforcement authority. Once courts find this authority, they tend toward flexible, liberal applications of the standing components in § 523(c). The existence of congressional civil enforcement authority transcends the literal standing requirements of § 523(c). Accordingly, whenever Congress designates a public agent as responsible for enforcing federal laws in the public interest, that agent comes within the ambit of a "creditor to whom such judgment is owed." [32]

---

28. *Oregon ex rel. Frohnmayer v. Lacy (In re Lacy)*, 74 B.R. 23, 25 (Bankr.D.Or.1987).

29. *Id.*

30. *E.g., New York v. Hemingway (In re Hemingway)*, 39 B.R. 619 (N.D.N.Y.1983); *In re Taibbi*, 213 B.R. 261 (Bankr.E.D.N.Y.1997); *New York by Abrams v. DeFelice (In re DeFelice)*, 77 B.R. 376 (Bankr.D.Conn.1987).

31. The concept of *"parens patriae"* literally means "parent of the country" and is rooted in the common law. To assert *parens patriae* standing, the state must be more than a nomi-

nal party without a real interest of its own; it must articulate an interest apart from the interests of particular private parties on whose behalf the action is brought; the state must satisfy a numerosity test by alleging an injury to a substantial segment of its population. *Illinois ex rel. Ryan v. Volpert (In re Volpert)*, 175 B.R. 247, 256 (Bankr.N.D.Ill. 1994), citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600–06, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).

32. *Securities and Exchange Comm'n v. Hodge (In re Hodge)*, 216 B.R. 932, 936 (Bankr. S.D.Ohio 1998).

The two federal government agencies, the Securities and Exchange Commission[33] and Federal Trade Commission,[34] whose standing had been questioned, have ultimately succeeded in maintaining bankruptcy dischargeability proceedings. Cases involving strict constructions of the government standing requirements have been reversed on appeal. The first of these reversals came in a case decided in the proof-of-claim context: *In re Evans Products* found that the Federal Trade Commission qualified as a creditor in its own right.[35] This holding, which reversed the bankruptcy court, turned on the FTC's status as a federal government agency seeking to enforce statutory obligations in the public interest.[36]

Next, in *In re Bilzerian*, the bankruptcy court denied the Securities and Exchange Commission standing to challenge the dischargeability of a disgorgement judgment against the debtor for securities fraud.[37] Under the bankruptcy court's reasoning, the SEC was not a creditor owed a debt because the defrauded investors could have brought a securities fraud action in their own right.[38] In its reversal, the district court refused to derive an exclusive party requirement from *Nathanson*. Instead the district court found that *Nathanson* "recognized a government agency's ability to enforce a debt as a creditor in a bankruptcy case even though the agency will not be the ultimate recipient of the money."[39] The *Bilzerian* appeal eliminated any requirement that a government agency be the only party entitled to institute civil enforcement proceedings.[40]

Finally, in *In re Cross* the bankruptcy court denied the Securities and Exchange Commission standing for failing the literal requirements of being a "creditor" with the "right to payment." According to the bankruptcy court, the SEC was not a creditor because the disgorgement judgment ordered payment to a receiver and because the SEC had no right to collect the judgment in its own name.[41] In its reversal, the Ninth Circuit Bankruptcy Appellate Panel focused on the SEC's statutory role as the independent regulatory agency charged with enforcing securities laws.[42] The BAP found that the SEC was entitled to creditor status in dischargeability proceedings as the appointed, statutory enforcer of the federal securities laws. By virtue of this statutory authority, the SEC had the receiver appointed, initiated the litigation resulting in the disgorgement

---

**33.** The standing of the Securities and Exchange Commission has been upheld in the following cases: *Securities and Exchange Comm'n v. Cross (In re Cross)*, 203 B.R. 456 (Bankr.C.D.Cal.1996), *rev'd* 218 B.R. 76 (9th Cir. BAP 1998); *Securities and Exchange Comm'n v. Bilzerian (In re Bilzerian)*, 151 B.R. 954 (Bankr.M.D.Fla.1993), *rev'd* No. 93–486–Civ–T–24A, 1995 WL 934184 (M.D.Fla. May 15, 1995); *Securities and Exchange Comm'n v. Hodge (In re Hodge)*, 216 B.R. 932 (Bankr.S.D.Ohio 1998); *Securities and Exchange Comm'n v. Kane (In re Kane)*, 212 B.R. 697 (Bankr.D.Mass.1997); *Securities and Exchange Comm'n v. Maio (In re Maio)*, 176 B.R. 170 (Bankr.S.D.Ind.1994).

**34.** The following cases have accorded standing to the Federal Trade Commission: *In re Evans Products Co.*, 60 B.R. 863 (S.D.Fla. 1986) (proof-of-claim context); *Federal Trade Comm'n v. Austin (In re Austin)*, 138 B.R. 898 (Bankr.N.D.Ill.1992); *Federal Trade Comm'n v. Black (In re Black)*, 95 B.R. 819 (Bankr. M.D.Fla.1989).

**35.** *In re Evans Products,* 60 B.R. at 868.

**36.** *Id.* at 869.

**37.** *In re Bilzerian,* 151 B.R. at 959.

**38.** *Id.*

**39.** *In re Bilzerian,* 1995 WL 934184 at *2.

**40.** *Id. See also In re Kane,* 212 B.R. at 700 (denying the SEC the right to bring dischargeability complaints would unduly hinder its ability to enforce the Securities Act); *In re Maio,* 176 B.R. at 171–72 (a private right of action does not strip the SEC of standing to enforce the federal securities laws through dischargeability actions).

**41.** *In re Cross,* 203 B.R. at 459.

**42.** *In re Cross,* 218 B.R. at 78.

judgment, and, therefore, held a claim—or enforceable obligation—against the debtor.[43]

The reversals in *In re Evans Products,* *In re Bilzerian,* and *In re Cross* underscore the importance of the federal government agency's role as enforcer and as protector in determining standing to bring dischargeability actions in bankruptcy cases. Also these reversals provide convincing support for a flexible, liberal application of the § 523(c) standing components.

### Analysis Under 11 U.S.C. § 523(c)

Does the Secretary of Labor qualify as "a creditor to whom such debt is owed"? Standing to bring a dischargeability action calls for a "creditor" holding a "debt" or "claim" that "is owed" to that "creditor." Dr. Egea asserts that only the plan participants or beneficiaries, none of whom filed a dischargeability action, qualify for standing. For purposes of standing, Dr. Egea submits that the Secretary cannot be a "creditor" because she is not the exclusive party entitled to sue under the ERISA enforcement provisions. Dr. Egea contends that the Secretary has no "claim" because she has no judgment and cannot obtain a monetary judgment against him and because the equitable relief available fails to qualify as a "claim." In addition, Dr. Egea maintains that no "debt is owed" to the Secretary because she lacks any right to payment in her own right and could not collect any judgment in her own name.

The analysis will follow that of the federal government standing cases by examining the Secretary's statutory civil enforcement authority, by applying the § 523(c) standing requirements in a liberal light, and by considering public policy.

### A. "Creditor"

■ The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor."[44] For her status as a creditor, the Secretary cites 29 U.S.C. § 1132(a)(2) that designates the plaintiffs qualified to bring civil enforcement suits under ERISA. The statute specifies that actions for fiduciary breach may be brought: "by the Secretary, or by a participant, beneficiary or fiduciary." Consequently, 29 U.S.C. § 1132(a)(2) explicitly empowers the Secretary of Labor to sue for fiduciary breach in her own name. Inclusion of the Secretary of Labor reveals Congress's intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole.[45] Identically situated, all four classes of plaintiffs share the common interest in the financial integrity of the plan.[46]

The designation of four classes of plaintiffs—the Secretary, plan participants, beneficiaries, fiduciaries—in 29 U.S.C. § 1132(a)(2) does not disqualify the Secretary from instituting civil enforcement proceedings. To do so would undermine Congress's statutory scheme of protecting employee benefit plans and would thwart the Secretary from enforcing ERISA.[47] Here, the alleged breaches would go unredressed because none of the plan participants or beneficiaries have filed suit. The allowance of other plaintiffs in ERISA civil litigation does not deprive the Secretary of creditor status in bankruptcy; the Secretary need not be the only party entitled to sue.[48] Even if the plan participants or beneficiaries had private rights of action under other ERISA civil enforcement provisions, the Secretary's standing remains

---

**43.** *Id.* at 79.

**44.** 11 U.S.C. § 101(10).

**45.** *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

**46.** *Id.*

**47.** *See In re Kane,* 212 B.R. at 700; *In re Maio,* 176 B.R. at 171–72.

**48.** *In re Bilzerian,* 1995 WL 934184 at *2.

unaffected.[49]

### B. "Debt" or "Claim"

■ Central to the standing requirement of § 523(c) is a "debt" and its counterpart, a "claim." A statute, such as ERISA in this case, can create a cause of action that gives rise to a "claim" or a "debt" under the Bankruptcy Code. Here, the Secretary bases her "claim" on planned litigation under 29 U.S.C. § 1109(a), which imposes civil liability on a fiduciary for breaching fiduciary duties owed to an employee benefit plan.

■ Although the Secretary has not yet filed suit under the ERISA civil enforcement provisions, the cause of action supporting the "claim" accrued before imposition of the automatic stay in Dr. Egea's bankruptcy case.[50] Contrary to Dr. Egea's argument, a "claim" by definition need not be reduced to judgment.[51]

The absence of a liquidated judgment leaves open the possibility that any resulting judgment could be structured to allow the Secretary the direct right of payment. Although the restitution orders in *In re Cannon* were made payable to the victims and precluded payment to the state, the Eighth Circuit recognized that the result could have been different had the state court ordered the restitution payable to the state for disbursement to the victims.[52] Here, the possibility of structuring the judgment is feasible through the catch-all provision of 29 U.S.C. § 1109(a) which subjects the breaching fiduciary "to such other equitable or remedial relief as the court may deem appropriate."

■ Under the Bankruptcy Code, a "claim" founded on either legal or equitable relief[53] must entail the payment of money.[54] Dr. Egea contends that no monetary claim is involved in the relief available under the ERISA civil enforcement provisions. In *In re Cannon*, the injunction to prohibit statutory violations failed to qualify as a "claim."[55]

For breach of fiduciary duty under 29 U.S.C. § 1109(a), ERISA holds the breaching fiduciary "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary," and subjects that fiduciary "to such other equitable or remedial relief as the court may deem appropriate." Accordingly, the statute offers relief in the form of restitution, disgorgement, and other equitable relief.

Here, the Secretary would seek an order compelling Dr. Egea to reimburse the benefit plans for funds owed plus interest, which amount to $1,601,290.81. If Dr. Egea fails to do so, the Secretary would seek to enforce compliance through a contempt action. The Secretary is empowered to bring an action to force the breaching fiduciary to make good on any losses to the employee benefit plans. The relief sought, which is in the nature of restitution or injunction, necessarily involves the payment of money. An order to restore funds to the benefit plans represents in essence an obligation to pay money because for all practical purposes that is the only way for

---

**49.** *In re Hodge,* 216 B.R. at 936.

**50.** A claim must arise "at the time of or before the order of relief concerning the debtor." 11 U.S.C. § 101(10)(A).

**51.** 11 U.S.C. § 101(5).

**52.** *In re Cannon,* 741 F.2d at 1141 n. 2.

**53.** 11 U.S.C. § 101(5) provides two definitions of a "claim": (A) right to payment and

(B) right to an equitable remedy for the breach of performance if such breach gives rise to the right of payment.

**54.** Any right that can be reduced to monetary damages is a "claim" even if that right could also be enforced by means of an equitable remedy. *In re Kilpatrick,* 160 B.R. 560, 564 (Bankr.E.D.Mich.1993), citing 124 Cong. Rec. 32,393 (1978).

**55.** *In re Cannon,* 741 F.2d at 1141–42.

the debtor to satisfy the obligation.[56] As a result, the ERISA civil enforcement provisions create a cause of action qualifying as a "claim."

### C. "Is Owed"

■ The definition of "creditor" found in 11 U.S.C. § 101(10)—"entity that has a claim against the debtor"—requires that the entity possess some bankruptcy claim, not that it be owed money.[57] On the other hand, "creditor to whom such debt is owed" means literally that the creditor *is owed* money by the debtor, and that the creditor holds a claim in its own behalf or in its own right. In fact, the Secretary stipulates that the Department of Labor is owed no funds in its own right.[58]

The fiduciary breach provisions in 29 U.S.C. § 1109(a) create no private right of action for the plan participants or the beneficiaries.[59] No matter which class member sues, recovery for fiduciary breach inures only to the employee benefit plan as a whole. Because relief for fiduciary breach exists solely for the employee benefit plan itself, neither the Secretary, nor the plan participants, nor the beneficiaries could claim that any debt is owed to them. Consequently, under the strict, literal construction of § 523(c) advanced by Dr. Egea, none of the parties empowered to sue for fiduciary breach under the ERISA civil enforcement provisions would have standing to seek a dischargeability determination in bankruptcy.

Courts espousing the flexible, liberal view of § 523(c) would circumvent the absurdity of denying the designated plaintiffs the right to challenge the dischargeability of a debt based on breach of ERISA fiduciary duties. In fulfilling the "owed to" requirement, these courts focus not on the government agency's right to actually *receive* or *collect* payment, but on the ability to *enforce* payment on behalf of its citizens.[60] According to the liberal view, the "right to payment" equals the ability to enforce.[61] From a government agency's statutory power to bring an action, these courts infer the ability to enforce any resulting order.[62] In contrast, *In re Cannon* required the government agency to have explicit statutory authority to collect the judgment on behalf of the victims.[63]

Here, only the employee benefit plans can recover under any orders resulting from fiduciary breach under ERISA. Yet the benefit plans are powerless to enforce those orders in their own right. By statute, Congress authorized the Secretary to bring an action for fiduciary breach for the benefit plans; the Secretary seeks relief in the form permitted by the statute; the Secretary necessarily has the ability to enforce the resulting orders. The Secretary's inherent ability to enforce those orders qualifies her as "a creditor to whom such debt is owed."

### PUBLIC POLICY

Public policy underlying both the Bankruptcy Code and ERISA further justifies the Secretary's standing to maintain a dischargeability proceeding on grounds of fiduciary defalcation under § 523(a)(4). In the two enactments, Congress subjects a fiduciary-trustee to a high standard of care and imposes severe sanctions for breach of fiduciary duties.

---

**56.** *See In re Kilpatrick,* 160 B.R. at 568.

**57.** *In re Volpert,* 175 B.R. at 258.

**58.** Final Pretrial Conference Order at § 6C Stipulation.

**59.** *See Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. at 148, 105 S.Ct. 3085; *Walter v. International Ass'n of Machinists Pension Fund,* 949 F.2d 310, 316–17 (10th Cir.1991).

**60.** *See, e.g., In re Cross,* 218 B.R. at 79; *In re Evans Products,* 60 B.R. at 867; *In re Taibbi,* 213 B.R. at 265–67.

**61.** *See In re Taibbi,* 213 B.R. at 265.

**62.** *In re Evans Products,* 60 B.R. at 867; *In re Taibbi,* 213 B.R. at 267.

**63.** *In re Cannon,* 741 F.2d at 1141–42; *In re Lacy,* 74 B.R. at 25.

Congress's purpose in enacting ERISA, as set forth in 29 U.S.C. § 1001(a), focuses on implementing safeguards to ensure the continued well being, welfare, and security of millions of employees who are affected by employee benefit plans. One of the overriding goals of ERISA is to prevent fiduciaries from misusing and mismanaging the assets of employee benefit plans. To implement those goals, ERISA establishes judicially enforceable standards and penalties to guard against fraud by fiduciaries.[64]

Section 523(a)(4) of the Bankruptcy Code reflects the public policy of protecting the integrity of fiduciary relationships.[65] Excusing the debts of a fiduciary who failed to act according to the high standard of care imposed by law would violate public policy.[66] Consequently, § 523(a)(4) declares all debts attributable to fraud or defalcation in a fiduciary capacity to be nondischargeable as bad acts.[67] A debtor who incurs liability through fiduciary defalcation is not entitled to benefit from the fresh start policy.[68]

In view of the strong public policy against breaches of fiduciary duty enunciated in ERISA and the Bankruptcy Code, to deny the Secretary of Labor standing to contest dischargeability would deprive the Secretary of her statutory role of protector of employee benefit plans and would make bankruptcy a haven for wrongdoers.[69]

In addition, ERISA and the Bankruptcy Code express consistent commitments to investigation and enforcement of federal laws. To effectuate the civil enforcement provisions, ERISA grants the Secretary of Labor broad powers to investigate any potential violations of the act, including breaches of fiduciary duties.[70] In turn, the Bankruptcy Code's exceptions to the automatic stay[71] allow the Secretary to continue investigating violations of ERISA fiduciary responsibilities and enforcing them. Actions brought by the Secretary of Labor to enforce violations of ERISA fiduciary provisions are actions to further public policy, and incidental benefits do not convert those actions to adjudications of individual rights.[72] Because the Secretary's enforcement of ERISA fiduciary duties serves a manifestly public purpose, it exemplifies the type of action Congress had in mind when it developed the exceptions to the automatic stay.[73] In summary, Congress's consistent approaches in ERISA and the Bankruptcy Code provide for continued government regulation and enforcement. This consistency eliminates the anomaly between allowing a government agency to continue or institute an action, but disallowing it standing to challenge the dischargeability of the resulting debt.[74]

### RELEASE BY ONE PLAN PARTICIPANT

██ Finally, Dr. Egea suggests that a release executed by a former employee is relevant to the issue of the Secretary's

**64.** *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. at 140 n. 8, 105 S.Ct. 3085.

**65.** *Antlers Roof–Truss & Builders Supply v. Storie (In re Storie),* 216 B.R. 283, 289 (10th Cir. BAP 1997).

**66.** *Id.*

**67.** The Court is mindful that standing merely allows the Secretary of Labor to challenge the dischargeability of the debt and does not imply that she will prevail on the merits. *See In re Hemingway,* 39 B.R. at 623.

**68.** *Bugna v. McArthur (In re Bugna),* 33 F.3d 1054, 1059 (9th Cir.1994).

**69.** *See In re DeFelice,* 77 B.R. at 378.

**70.** 29 U.S.C. § 1134.

**71.** 11 U.S.C. § 362(b)(4) (now amended, 112 Stat. 2681, Oct. 21, 1998).

**72.** *Dole v. Hansbrough,* 113 B.R. 96, 98 (D.D.C.1990); *Donovan v. Porter,* 584 F.Supp. 202, 207 (D.Md.1984).

**73.** *Martin v. Friedman,* 133 B.R. 609, 611 (N.D.Ohio 1991) (in which the Secretary of Labor did not violate the automatic stay for filing an action for fiduciary breach under 29 U.S.C. § 1109 one month after the debtor declared bankruptcy).

**74.** *See In re DeFelice,* 77 B.R. at 379.

standing. In that written release, the employee, who was also a plan participant, discharged Dr. Egea from all claims arising from their employment relationship.[75] Dr. Egea submits that the release prohibited that plan participant from filing for a dischargeability determination.

█ The release from the plan participant is inconsequential on the issue of standing. The release and discharge concerned the employment relationship, not the fiduciary relationship, between Dr. Egea and that employee. In addition, the result would not have been different had the release exonerated Dr. Egea from his fiduciary responsibilities to the employee benefit plans. Any agreement that purports to relieve an ERISA fiduciary from liability is void as against public policy.[76]

### CONCLUSION

The Court finds and concludes that the Secretary of Labor has standing under 11 U.S.C. § 523(c) to maintain the action for a dischargeability determination on grounds of fiduciary defalcation. Accordingly, the Court overrules Dr. Fernando M. Egea's motion to dismiss.

The foregoing memorandum shall constitute findings of fact and conclusions of law under FED. R. BANKR. P. 7052 and FED. R. CIV. P. 52(a). A judgment reflecting this ruling shall be entered on a separate document in compliance with FED. R. BANKR. P. 9021 and FED. R. CIV. P. 58.

IT IS SO ORDERED.

---

**75.** Brief in Support of Motion To Dismiss, Doc. 15, 10/15/98, Exhibit A.

**76.** 29 U.S.C. § 1110(a); *see IT Corp. v. General American Life Ins. Co.*, 107 F.3d 1415, 1418–19 (9th Cir.1997); *cert. denied* —— U.S. ——, 118 S.Ct. 738, 139 L.Ed.2d 675 (1998).