COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JONATHAN D. MITCHELL and

TERRY L. MITCHELL,


 Appellants,


v.


FORT DAVIS STATE BANK,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00043-CV



Appeal from


 394th District Court


of Brewster County, Texas


(TC # B-8,094)




O P I N I O N



 Jonathan and Terry Mitchell challenge a summary judgment granted in favor of the
Fort Davis State Bank. At issue is the validity of the Bank's lien on the Mitchells' property in
Marathon, Texas. For the following reasons, we affirm.

FACTUAL SUMMARY


 In 1991, Jonathan Mitchell purchased eight and one half acres in Marathon known as
Tract 13. The next year, Jonathan began construction of the family home. The Mitchells
moved onto the property in 1993 and lived in a mobile home as the house was completed. In the
mid-1990's, Jonathan began construction of four buildings for his business known as Mitchells'
Furniture Warehouse. The business filed an assumed name certificate as a retail furniture and auto
sales business.

 The Mitchells, d/b/a Mitchell's Furniture Warehouse, obtained a Small Business
Administration loan from the Bank in the amount of $680,000. The loan was used to purchase 
inventory, to pay outstanding debt to the Bank, and to provide working capital. As security for the
loan, the Mitchells executed a deed of trust that gave the Bank a lien on the northern half of Tract 13. 
The deed of trust described the property as:

 A 4.524-acre tract, more or less, out of the North half (N/2) of Tract 13, BURNHAM
SUBDIVISION, Marathon, Brewster County, Texas, out of Section 18, Block 4, G.C.
& S.F. Ry. Co. Survey, Brewster County, Texas as described in Vol. 24, Pg. 312,
Official Public Records of Brewster County, Texas.


 Grantor represents to Beneficiary that no part of the property is either the residential
or business homestead of Grantor and that Grantor neither does nor intends to reside
in or conduct business on the property. Grantor renounces all present and future
rights to a homestead exemption for the property. Grantor's homestead and residence
is located on a 4.137 acre tract out of the S/2 of Tract 13, BURNHAM
SUBDIVISION, more particularly described in the 'Designation of Homestead and
Affidavit of Non-Homestead' attached hereto and incorporated by reference herein. 


Both Jonathan and Terry signed the Designation of Homestead and Affidavit of Non-Homestead,
which stated:

 'That we, JONATHAN D. MITCHELL and TERRY L. MITCHELL ('Affiants'), of
the County of Brewster, State of Texas, have this day set apart and designated, and
by these presents do set apart and designate, as the homestead claimed by us, and
which our family is entitled to under the Texas Constitution and laws of the State of
Texas, exempt from forced sale, the following described property which we now
own, use and occupy and upon which we now live and reside, to-wit:


 A 4.137-acre tract, more or less, out of the South half (S/2) of Tract
13, BURNHAM SUBDIVISION, Marathon, Brewster County, Texas,
out of Section 18, Block 4, G.C. & S.F. Ry. Co. Survey, Brewster
County, Texas, as described in Vol. 24, Pg. 312, Official Public
Records of Brewster County, Texas.' 


 Affiant on oath swears that the following statements are true:


 'Affiant relinquishes all homestead claims that Affiant might have under the Texas
Constitution or other laws of the State of Texas to all other property owned by
Affiant or in which Affiant may have an interest. Affiant disclaims all homestead
right, interest, and exemption related to our nonhomestead property, including the
following described real property located in Brewster County, Texas, to-wit:


 A 4.524-acre tract, more or less, out of the North half (N/2) of Tract
13, BURNHAM SUBDIVISION, Marathon, Brewster County, Texas,
out of Section 18, Block 4, G.C. & S.F. Ry. Co. Survey, Brewster
County, Texas as described in Vol. 24, Pg. 312, Official Public
Records of Brewster County, Texas.'


 'We further declare that this Homestead Designation and Affidavit of Nonhomestead
is being made by us for the purpose of inducing FORT DAVIS STATE BANK,
hereinafter called 'Lender', to make a loan in the amount of $680,000.00 to us. We
are aware of the legal consequences of fraudulent inducement to lend money. We
understand this Affidavit shall be relied upon by said Lender in order to make a loan
to us.'


 In December 2002, the Mitchells filed for bankruptcy under Chapter 7. Among other items,
they claimed "4 acres and house, 207 Airport Rd., Marathon, Texas" and "4 acres and metal
building" as exempt property in their bankruptcy forms. (1) The Bank sought relief from the
bankruptcy stay, claiming its lien on the northern half of the property and its intent to foreclose on
the lien.  The Mitchells did not object to the Bank's motion. The bankruptcy court granted the
motion and lifted the stay. In the order, the court specifically found that the Bank held a valid and
perfected lien on the northern 4.524 acre tract. The Bank foreclosed on the deed of trust lien; the
Mitchells received notice of the foreclosure, but they did not challenge or otherwise try to prevent
the sale.

 The Mitchells later filed suit against the Bank seeking a declaratory judgment that the Bank's
claim, lien, and purported foreclosure were void. They also filed suit to quiet title and to recover
damages for the violation of their homestead rights. In response, the Bank pled the affirmative
defenses of res judicata and judicial estoppel, contending the validity of the lien was adjudicated
during the bankruptcy proceedings, and the Mitchells were estopped from claiming homestead. The
Bank also alleged the Mitchells had waived their homestead rights in the property. Because the
Mitchells had asserted a claim for declaratory relief, the Bank sought reasonable and necessary
attorney's fees. (2)

 Both the Mitchells and the Bank filed motions for summary judgment. (3) The trial court
denied the Mitchells' claims and granted summary judgment for the Bank. The court found the lien
was valid as to the 4.524 acres in the northern half of the tract. The Mitchells were ordered to pay
attorney's fees of $5,000, plus costs in the amount of $399. 

VALIDITY OF LIEN


 When both sides move for summary judgment and the trial court grants one motion and
denies the other, we review both motions and determine all questions presented. FM Properties
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). Where the trial court does not
specify the grounds upon which summary judgment is granted, we must affirm if any of the grounds
are meritorious. Id. 

 The Bank claimed it was entitled to summary judgment based on the affirmative defenses
of res judicata and judicial estoppel. The movant must carry the burden of establishing there is no
genuine issue of material fact and that judgment should be granted as a matter of law. Southwestern
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Edwards v. Mesa Hills Mall Co. Ltd.
Partnership, 186 S.W.3d 587, 590 (Tex.App.--El Paso 2006, no pet.). A defendant seeking summary
judgment based on an affirmative defense must conclusively prove all of the elements of the
affirmative defense. KPMG Peat Marwick v. Harrison County Housing Finance Corp., 988 S.W.2d
746, 748 (Tex. 1999). We must assume all of the evidence favorable to the non-movant is true,
indulge every reasonable inference in favor of the non-movant, and resolve any doubts in favor of
the non-movant. Edwards, 186 S.W.3d at 590. 

Res Judicata


 The Bank alleged the Mitchells were barred by the doctrine of res judicata from denying the
validity of the lien since the subject of the bankruptcy court's order was the validity and
enforceability of the lien, and an order from the bankruptcy court lifting the automatic stay is a final
appealable order. Because the issue is whether the federal bankruptcy court order bars the Mitchells'
claims in state court, the federal law of res judicata controls. Geary v. Texas Commerce Bank, 967
S.W.2d 836, 837 (Tex.1998)(since bankruptcy is a federal proceeding, federal law controls whether
res judicata will bar a later state court proceeding). Under federal law, res judicata bars the litigation
of claims that either have been litigated or should have been raised in an earlier suit. In re
Southmark Corp., 163 F.3d 925, 934 (5th Cir.1999). Res judicata requires four elements: (1) parties
who are identical or in privity; (2) the judgment in the prior action was rendered by a court of
competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4)
the same claim or cause of action was involved in both actions. Id. In determining whether the
actions involved the same claim or the same cause of action, the Fifth Circuit has adopted the
transactional test of the Restatement (Second) of Judgments, § 24. Id. The fourth element is
met if the two actions are based on "the same nucleus of operative facts." Id. 

Jurisdiction and Same Parties


 Neither party claims the bankruptcy court lacked jurisdiction to lift the stay. Both the
Mitchells and the Bank were parties to the bankruptcy proceeding. Thus, the first two elements are
satisfied. 

Final Judgment on the Merits


 According to the Mitchells, the contested matter in the Bank's effort to lift the stay did not
address the validity of the lien. (4) They also argue the validity of the lien should have been brought
through an adversary proceeding. 

 There are two different forms of adversary process within a bankruptcy case: contested
matters and adversary proceedings. D-1 Enterprises, Inc. v. Commercial State Bank, 864 F.2d 36,
39 (5th Cir. 1989). A contested matter is a quick motion and hearing procedure that provides for
expedited relief from an automatic stay. See id. at 38-39. An adversary proceeding requires the
service of summons and is also used to determine the validity of a lien. Fed.Bankr.Proc.R. 7001
and 7002.

 The Mitchells rely on Pemelton for their argument that the validity of a lien is not an issue
in a contested matter. (5) See Pemelton v. Russell Trusts Partnership, 913 S.W.2d 710 (Tex.App.--
Corpus Christi 1995, no pet.)There, the debtor filed for Chapter 12 bankruptcy and Russell, a secured
creditor, was granted relief from stay. Id. at 711-12. Russell then filed suit in state court to foreclose
on its vendor's lien and summary judgment was granted in its favor on the basis that res judicata
barred Pemelton from contesting the foreclosure. Id. at 712. The Corpus Christi Court of Appeals
held the bankruptcy court's order lifting the stay did not have the preclusive effect on Pemelton's
defense against foreclosure since the court did not adjudicate the merits of Russell's claims. Id. at
713.

 Pemelton is distinguishable for three reasons. First, the creditor's suit seeking judicial
foreclosure was filed while the bankruptcy suit was still pending. Id. Here, the Mitchells filed their
suit seeking declaratory judgment and trespass to try title after their debts were discharged by the
bankruptcy court and after the Bank had foreclosed.

 Secondly, the Corpus Christi court relied upon an opinion from the First Circuit for its
position that a decision to lift a stay is not an adjudication of the validity of a claim. Grella v. Salem
Five Cent Sav. Bank, 42 F.3d 26, 35 (1st Cir. 1994). Grella held that a determination made at a
motion for relief hearing is not an adjudication as to the merits of a creditor's claim or any possible
defense or counterclaims. (6) Id. But the Fifth Circuit has held that an unrelated claim--such as lender
liability--is not barred by res judicata because it is not a direct defense that the debtor could or should
have litigated in response to the creditor's motion for relief from stay. D-1 Enterprises, 864 F.2d
at 39. Thus, a debtor's direct defense that could and should have been litigated in response to a
creditor's motion to lift the stay would be precluded by the application of res judicata. See D-1
Enterprises, 864 F.2d at 39. 

 Third, the Corpus Christi Court of Appeals has since applied D-1 Enterprises. See Ford v. 

City State Bank of Palacios, 44 S.W.3d 121 (Tex.App.--Corpus Christi 2001, no pet.). There, Ford
filed for bankruptcy to discharge several delinquent bank loans. When the bank sought relief from
the automatic stay, the bankruptcy judge signed an order continuing the stay on the condition that
Ford make timely payments to the trustee. Ford failed to make the first payment. The stay was lifted
and Ford moved for voluntary dismissal of his bankruptcy action on December 12, 1997. One month
later, Ford filed a lender liability suit in state court, alleging violations of the Texas Debt Collection
Practices Act and the Texas Deceptive Trade Practices Act and later added causes of action for
breach of contract, promissory estoppel, detrimental reliance, and fraud. The bank's motion for
summary judgment was granted. At issue on appeal was the critical question of whether the
bankruptcy court's order conditionally continuing the automatic stay was a final judgment on the
merits. Relying upon D-1 Enterprises, the court differentiated between direct and indirect defenses. 

 [T]he courts have held that 'indirect defenses,' such as breach of contract, fraud and
the like, would be severed from the expedited stay litigation if raised in an effort to
defeat the creditor's motion. The lender liability claims asserted in the adversary
proceeding at issue in this case were not, under the foregoing analysis, 'direct
defenses' that the debtor could or should have litigated in response to the creditor's
motion for relief from the stay. Hence they are not precluded by the application of
res judicata.


Ford, 44 S.W.3d at 132. For the reasons stated, we decline to follow Pemelton.

 Finally, the Mitchells contend the validity of the lien should have been challenged through
an adversary proceeding. Neither party in this case sought an adversary proceeding to determine the
validity of the lien. (7) Rather, the only determination made regarding the validity of the lien was
expressly given by the bankruptcy court in its order granting the Bank's motion for relief. Although 
the lien's validity was not determined through an adversary proceeding, the Fifth Circuit has held
that what is essential to the application of res judicata is the principle that the previously unlitigated
claim to be precluded could and should have been brought in the earlier litigation. D-1 Enterprises,
864 F.2d at 38. In addition, the nature of the proceeding does not automatically determine whether
an action is barred by res judicata. See In re Intelogic Trace, Inc., 200 F3d 382, 389 (5th Cir. 2000);
In Re Howe, 913 F.2d 1138, 1147 n.28 (5th Cir. 1990)("We do not intimate . . . whether a proceeding
sought to be given res judicata effect is an adversary proceeding or a contested matter . . . [t]he
critical question . . . is whether the party could or should have asserted the claim in the earlier
proceeding."). 

 While the validity of a lien may be challenged in an adversary proceeding, neither party here 
instituted such proceedings. The bankruptcy court determined the issue of the validity of the lien
as a contested matter and specifically determined that the bank had a valid and perfected lien. 
Having made this determination, the bankruptcy court's order was a judgment on the merits. An
order granting relief from an automatic stay is a final and appealable order. In re Chunn, 106 F.3d
1239, 1243 (5th Cir. 1997). Since the Mitchells did not appeal the order, it became a final
judgment. 

Same Claim or Cause of Action in Both Actions


 We next examine the critical issue of whether the Mitchells' present claim that the Bank did
not possess a valid lien is or could be based on the "same nucleus of operative facts" as the Bank's
motion to lift the stay. Essential to the application of res judicata is the principle that the previously
unlitigated claim could and should have been brought in the earlier litigation. D-1 Enterprises, 864
F.2d at 38. Largely unrelated matters or "indirect defenses" are not to be asserted in response to a
creditor's motion for relief from stay and will not be barred by res judicata. See id. at 39. But a
debtor's "direct defense" that can or should be raised is among the claims that will be precluded by
res judicata. See id. at 39 (lender liability claims asserted in adversary proceeding at issue were not
direct defenses that debtor could or should have litigated in response to the creditor's motion for
relief from stay).

 The Bank based its motion on 11 U.S.C. §362 (d)(1) and (2). Sections 362(d)(1) and (2)
provide: 

 On request of a party in interest and after notice and a hearing, the court shall grant
relief from the stay provided under subsection (a) of this section, such as by
terminating, annulling, modifying, or controlling such stay--


 (1) for cause, including the lack of adequate protection of an interest in property of
such party in interest;


 (2) with respect to a stay of an act against property under subsection (a) of this
section, if--


 (A) the debtor does not have an equity in such property; and 


 (B) such property is not necessary to an effective reorganization.


The trial court did not specify upon which ground the order was granted. 

 To make a prima facie case for relief under Section 362(d)(1), a movant must demonstrate
that it holds a claim; secured by a valid, perfected lien upon estate property; and that a decline in the
value of its collateral is either occurring or is threatened, against which the creditor is precluded from
protecting its interests due to the existence of the automatic stay. In re Self, 239 B.R. 877, 881
(Bankr.E.D. Tex. 1999). To establish a prima facie case under Section 362(d)(2), a movant must
demonstrate the amount of its claim, that its claim is secured by a valid, perfected lien in property
of the estate, and that the debtor lacks equity in the property. In re Kowalsky, 235 B.R. 590, 594
(Bankr.E.D. Tex. 1999). To be entitled to relief, the Bank was required to make a prima facie
showing that it held a valid and perfected lien.

 Since the burden was placed upon the Bank to establish its perfection and validity in the lien,
the Mitchells had the burden to demonstrate that the Bank's lien was unperfected or invalid. See 11
U.S.C. § 362 (g)(1)&(2)(in a hearing concerning relief from stay, the movant bears the burden of
proof on the issue of the debtor's equity in property; and the non-movant has the burden of proof on
all other issues). Here, the Mitchells did not object to the Bank's motion, (8) and they chose not to
appeal. They cannot now collaterally attack the validity of the Bank's lien. 

 Bankruptcy courts have jurisdiction to hear and determine all cases under Title 11 and all
core proceedings. See 28 U.S.C. § 157 (b)(1). A motion to terminate, annul, or modify an automatic
stay, as well as determinations regarding the validity of liens, are core proceedings that should be
brought before bankruptcy courts. See id. at § 157(b)(2)(G) & (K). Because a challenge to the
validity of the lien could have and should have been raised before the bankruptcy court, the doctrine
of res judicata precludes the Mitchells from raising the defense in the state district court. Since the
trial court did not err in granting summary judgment on the basis of res judicata, we need not address
the issue of judicial estoppel. Issue Two is overruled. 

 Nor did the trial court err in denying the Mitchells' cross-motion for summary judgment. In
their motion, the Mitchells sought a declaration that the Bank's lien and foreclosure were illegal and
void. Because our analysis of this issue is identical to our discussion of Issue Two, we overrule
Issues One and Three. 

ATTORNEYS' FEES


 We must next determine whether the trial court properly awarded attorneys' fees in the
amount of $5,000. In their fourth issue, the Mitchells contend the trial court erred in awarding fees
because the award was given in the summary judgment context and the fees were controverted by
their attorney's affidavit creating a fact issue. 

 The Mitchells sought a declaratory judgment in their original petition. Under the Uniform
Declaratory Judgments Act, a trial court may award costs and reasonable and necessary attorney's
fees that are equitable and just. Tex.Civ.Prac.&Rem.Code Ann. § 37.002(a) & 37.009. The
"Act does not require an award of attorney fees to the prevailing party." Bocquet v. Herring, 972
S.W.2d 19, 20 (Tex. 1998). Since the trial court is not required to award fees, an award is within
the trial court's discretion. Id. We must determine whether the trial court abused its discretion by
awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or
when the award was inequitable or unjust. Heritage Resources, Inc. v. Hill, 104 S.W.3d 612, 618
(Tex.App.--El Paso 2003, no pet.). There are four limitations to the trial court's discretion: the fees
must be reasonable and necessary, which are matters of fact; and the award must be equitable and
just, which are matters of law. Id., citing Bocquet, 972 S.W.2d at 21.

 The trial court does not abuse its discretion by the mere fact that an appellate judge under
similar circumstances would have decided the matter in a different manner. Id. Rather, a trial court
abuses its discretion only if it acts without reference to guiding legal rules and principles, or, stated
differently, its decision is arbitrary or unreasonable. Id. Here, the Bank alleged that preclusive
affirmative defenses clearly barred the Mitchells' declaratory judgment claim and that the Bank was
required to incur substantial expenses in defending the claim. In support of its fee request, the Bank
attached the affidavit of James W. Brewer. Brewster alleged the firm of Kemp Smith LLP had been
retained by the Bank, had incurred fees and costs of $8,087.51, expenses of $399.51, and would
incur an additional $1,800 in the prosecution of its motion for summary judgment.  To justify the
total request, Brewer identified all the attorneys and the paralegal who assisted with the case, the
number of hours each attorney and paralegal worked on the case, and the cost per hour for each
attorney and paralegal.

 In response, the Mitchells attached the affidavit of their attorney, Robert Truitt. Truitt stated
the following:

 Further, approximately two weeks ago, I received from Mr. James W. Brewer
documentation through a letter dated April 14, 2005 forwarding to me--


 'Pursuant to your request for documentation of the Defendant's
request for attorneys fees contained in its Defendant's Motion for
Summary Judgment, enclosed are redacted copies of invoices
evidencing fees and costs incurred.'


 I have received these 'redacted invoices,' which were dated March 12, 2004; April 7,
2004; May 14, 2004; June 16, 2004; July 12, 2004; August 9, 2004; and September 9,
2004 and find there to be missing a complete description of the work performed, a
substantial amount of time spent in duplication of legal services, and apparently also
unnecessary time and expense.


 Therefore, in my professional opinion, the attorneys' fees and costs sought by Fort
Davis State Bank in the amount of $8,087.51 and $1,800.00 are neither reasonable
nor necessary, particularly as to the amount of $1,800 for prosecution of the motion
for summary judgment, which is an estimate by Mr. Brewer, without any
documentation provided for this figure.


 The Mitchells argue that since they contested Brewer's affidavit, they raised a fact issue
precluding summary judgment.

 Despite the Bank's request for fees in the amount of $8,087.51 and $1,800, the trial court
awarded $5,000. The Mitchells must show the fees were unreasonable or unnecessary. See Hill, 104
S.W.3d at 618. This they have failed to do. Because the trial court's award was within the range
proven by the Bank, the trial court did not abuse its discretion. Issue Four is overruled. Having
overruled all of all issues for review, we affirm the judgment of the trial court.


August 30, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.

1. In Schedule D, the Mitchells listed the secured creditor for the "4 acres and metal building" as the Small
Business Administration and they listed the secured creditor for the "4 acres and house, 207 Airport Rd., Marathon,
Texas" as Washington Mutual. Regarding the "4 acres and metal building," the Mitchells placed "X's" in the columns
indicating that the secured creditor's claim was contingent, unliquidated, and disputed. 
2. Section 37.009 of the Texas Civil Practice and Remedies Code provides, "In any proceeding under this
chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." 
Tex.Civ.Prac.&Rem.Code Ann. § 37.009 (Vernon 1997). 
3. The Bank's motion was based on the affirmative defenses of res judicata and judicial estoppel. The Mitchells'
motion sought a declaration that the Bank's lien was void. 
4. The bankruptcy court lifted the stay "after consideration of the pleadings, and finding that no objections were
filed to the Motion and the time to object has expired."
5. The Mitchells also rely on several other Texas federal and state cases, all of which are distinguishable. See
Ford v. City State Bank of Palacios, 44 S.W.3d 121, 130-32 (Tex.App.--Corpus Christi 2001, no pet.)(lender liability
was not an issue actually litigated in bankruptcy proceeding); Flippin v. Wilson State Bank, 780 S.W.2d 457, 458-59
(Tex.App.--Amarillo 1989, writ denied)(bankruptcy court order confirming reorganization plan was res judicata and
barred plaintiff's state court suit seeking to cancel deed of trust lien); In re Mathis, 64 B.R. 279, 280 & 284 (Bankr.N.D.
Tex. 1986)(case was a direct appeal from a motion to modify stay order where debtor challenged the validity of the note
alleging the creditor changed the status of note from unsecured to secured and court judge specifically advised debtor
to bring as adversary proceeding).
6. Grella is also significantly distinguishable for the following reasons: (1) the bankruptcy court order lifting
the automatic stay did not make any findings as to the status of the bank's security interest in its notes; (2) the case was
based on collateral estoppel, not res judicata; and (3) the trustee asserted a preference counterclaim, not a direct defense. 
Grella, 42 F.3d at 28-29, 31; see also Baskett v. Pleasant, 1996 WL 135680 at *8 n.8 (Tex.App.--Dallas 1996, writ
denied)(not designated for publication); Rios v. Town North National Bank, 1995 WL 375490 at *4 n.1 (Tex.App.--Dallas 1995, writ denied)(not designated for publication).
7. During the summary judgment hearing, the trial court asked the Mitchells' attorney whether he could have
raised an objection and converted the contested matter to an adversary matter. Counsel responded: "Your Honor, you
don't convert a contested matter to an adversary matter or a motion for lift stay to an adversary matter. You actually have
to file a brand new lawsuit inside the bankruptcy court." The court then asked, "Well, couldn't you have done that?"
Counsel answered, "Could we have done that? Yes, we could have, Your Honor. They could have done it too, Your
Honor, if they wanted to clarify the issue of whether or not they had a valid lien. It could have been brought by either
party. There is no burden on either party to necessary [sic] bring it."
8. The Mitchells contend that res judicata does not apply since they disclosed their property on Schedule A and
claimed it as exempt on Schedule C. Although the Mitchells listed their property in the schedules, they did not allege
the defense of homestead in opposition to the Bank's motion.